[Civ. No. 22555. First Dist., Div. One. Oct. 26, 1966.]

NICHOLAS RATKOVICH, Plaintiff, Cross-defendant and Respondent, v. CITY OF SAN BRUNO et al., Defendants, Cross-complainants and Appellants.

872

Joseph A. Galligan, City Attorney, and Richard G. Logan for Defendants, Cross-complainants and Appellants.

Thomas L. Bocci and Harold W. Martin for Plaintiff, Cross-defendant and Respondent.

SULLIVAN, P. J.—In this action to recover monies paid under municipal ordinances regulating trucking on city streets, defendant and cross-complainant City of San Bruno (City) and defendant city officials appeal from a judgment[1] entered against them, after a nonjury trial, awarding plaintiff the sum of $33,592.57 with interest and denying the City all recovery on its cross-complaint.[2]

---

[1] Although the judgment provides that ''defendants take nothing on its and their cross-complaint,'' the cross-complaint itself and the pretrial order clearly show that the City is the sole cross-complainant.

[2] Defendants also appeal from the order denying their motion for a new trial. Such an order is nonappealable (Code Civ. Proc., § 963) and the appeal therefrom must be dismissed. (*Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 156 [338 P.2d 907].)

Plaintiff is a licensed contractor doing business under the name of Ratkovich Construction Company. In June 1960 he entered into a contract with the Public Utilities Commission of the City and County of San Francisco to haul dry fill to the San Francisco International Airport (Airport) for the extension of a runway and the construction of a maintenance base area. Under the contract, the work in connection with the runway had to be completed within 160 days subject to a penalty of $100 per day for late performance and the work for the maintenance base area had to be completed within 330 days subject to a similar penalty of $50 per day. Pursuant to the contract plaintiff hauled fill from locations both inside and outside the City limits over the City's streets to the Airport. The parties stipulated that this amounted to 3,016,100.2 tons over the period from July 1960 to November 1961.

Before plaintiff entered into the above hauling contract defendant City had enacted as part of the San Bruno City Code certain ordinances regulating trucking on its streets. These in substance provide that with the exception of certain specified streets to be marked as truck routes, the use, operation or maintenance upon all remaining City streets of any motor vehicle or truck of a gross weight of 27,000 pounds or over is unlawful. Nevertheless vehicles hauling materials exceeding such gross maximum weight limits may be permitted along streets from which they are excluded upon the filing with the city clerk of an application in the form prescribed by the code, together with a minimum filing fee of $35 ''to cover the cost of the city's investigation of such application.''[3] The city manager shall make or have made an investigation of the facts stated in the application and within seven days of the date of its filing ''shall either grant a permit with or without modification, or deny the same in whole or in part.''[4]

---

[3] San Bruno City Code, article VI, §§ 16.65-16.69.

[4] San Bruno City Code, section 16.70. Section 16.71 provides that the city manager shall grant the permit only if he finds (a) that good cause appears for the issuance of a special permit under former Veh. Code, section 710 (now Veh. Code, §§ 35780-35784); or (b) that emergency conditions require the operation or movement of the type of vehicle otherwise prohibited; and (c) that by an undertaking or other security necessary to protect the highway specified in the application or to provide indemnity for any resulting injury, the City will be fully indemnified from injury, ''and that a permit fee as the payment in the form of a liquidated amount for any and all such damages and injuries to such highways shall be a condition of operation to the use of such highways pursuant to special permit and shall fully compensate the city for such use. (Ord. 641)''

Both section 16.72[5] and section 16.74[6] of the City's code provide for the payment by the permittee of two cents (2c) per ton for the privilege of using San Bruno Avenue.

Shortly before plaintiff started hauling under the contract he was told by an engineer at the Airport that he would have to make his own arrangements with defendant City to haul over its streets. He then consulted the city clerk who advised him of the necessity of a permit and of a fee of two cents (2c) per ton. When plaintiff protested that as a licensed contractor he had the right to haul he was told that unless he received a permit he would be subject to arrest. While plaintiff testified on direct examination that he had not considered this two cents a ton charge in computing his bid upon which the contract was awarded and that he did not learn of the existence of the charge until after the contract was awarded, he admitted under cross-examination that he was aware of state

[5]Section 16.72 provides: "The issuance or withholding of a permit is at the discretion of the city manager. On the issuance of a permit, the permittee must comply with the following conditions of operation:

"(a) For the right to use all or any part of San Bruno Avenue within the limits of the city, the permittee must compensate the city, as a liquidated sum in compensation for and in full satisfaction of all damages and injury to said highway which will be caused by trucks weighing twenty-seven thousand (27,000) pounds or over at the rate of two cents (2c) per ton for each ton hauled on said highway. It is found upon investigation that payment of said sum is necessary to protect said highway from the actual damages and injury resulting from the operation of such trucks, and by reason of the difficulty in computing such damages, two cents (2c) is found, in advance, to be reasonable compensation for the use of said highway as a condition of operation of said trucks. The city manager is authorized to accept said sum in full satisfaction for all damages and injury to said highway to be caused by such trucks, and is authorized, on the issuance of such a permit, to enter into an agreement, stipulating to the acceptance of said sum in full satisfaction for all damages and injury to occur from the operation of said trucks on San Bruno Avenue.

"(b) The fulfillment, in the discretion of the city manager, of any other conditions specified in Vehicle Code, Section 710(c) for any and all highways and streets involved. (Ord. 641)"

[6]Section 16.74 provides: "In the event a permit be granted, the permittee shall pay to the city clerk a fee for the privilege of said permit at the rate of two cents (2c) per ton hauled on San Bruno Avenue and a sum to be fixed by the city manager for hauling on any other highway or street. Issuance of a permit pursuant to a proper application and payment of the fees provided in this Article constitutes an acceptance of said fees in full satisfaction as indemnity for all damages and injury to said highways or streets arising from the use of said highways or streets by the permittee. Payment of fees shall be made in monthly installments and shall be paid in the office of the city clerk, on or before the 10th day of the month succeeding the hauling with the deposit heretofore provided to be applicable on payments due for the last month of operation. (Ord. 641, 703 and 746)"

regulations fixing weight limitations and also of local ordinances to the same effect. Plaintiff further testified that he felt it necessary to select the route over San Bruno Avenue because it was the shortest and most direct route and that in view of the time limitations for the performance of his contract, he "had no alternative" but to apply for a permit. It was granted on July 19, 1960.

Plaintiff thereupon carried out his hauling operations to the extent already indicated. He used "double-bottomed dumps," that is a tractor pulling two trailers, each set of trailers holding about 25 or 26 tons of fill, making the gross weight of the entire vehicle 75,000 to 80,000 pounds. Almost every load comprising the 3,016,100.2 tons of fill was hauled down San Bruno Avenue. Plaintiff testified that at the time he applied for the permit, he did not know that he could haul to the Airport by an alternate route along Junipero Serra Boulevard to Sneath Lane to El Camino Real[7] and then to Spruce Street and through South San Francisco to the Bayshore Highway, nor was he so informed by any official of defendant City; he further stated that during the time he was hauling the fill he did not know of such alternate route.

Plaintiff paid the two cents per ton charge for 10 months until May 1961 when he refused to make further payments although he continued his hauling operations. The parties agree that payments made by him total $33,592.57. On August 24, 1961 plaintiff commenced the present action to recover the monies paid to the City together with punitive damages and in addition to secure a judgment declaring all documents pertaining to the permits applied for by plaintiff null and void and restraining defendants from interfering with plaintiff's hauling operations.[8] Defendant City cross-complained for $32,524.05 as additional monies due under the ordinances.[9] As we have said, the court below rendered judgment in plaintiff's favor for $33,592.27, the total amount paid by him to the City, and denied the City all recovery on its cross-complaint.

The bases of the court's decision as gleaned from its findings of fact and conclusions of law and from its memorandum

[7]These streets within defendant City were specifically excluded from the operation of the ordinance by section 16.65.

[8]Plaintiff's complaint in separate counts sought recovery of the monies on theories of restitution, implied contract, duress and fraud.

[9]City's cross-complaint in additional counts sought recovery of the balance due for damage to its streets and "other direct and indirect expenses" ($91,407.43) and for "actual damage" to its restricted streets after May 1, 1961 ($60,000).

opinion may be summarized as follows: Plaintiff could not claim the exemption from the weight limitations of the ordinance provided by Vehicle Code section 35704[10] in respect to vehicles used in the construction of a public utility, since the Airport was a public *enterprise* and not a public *utility*. However the charges made by the City under the ordinances were excessively over the amount necessary to indemnify it for any damages. Sections 16.72 and 16.74[11] are illegal and in contravention of public policy in that (a) they are not regulatory in nature but for the primary purpose of raising revenue;[12] (b) the state has preempted the field of raising revenue; (c) they constitute an improper exercise of the police powers and are not authorized either by constitutional or statutory provision. While defendants did not act fraudulently or deceitfully, plaintiff paid the charges to the City under duress in that defendants represented to him that the permit was mandatory and that he could not use San Bruno Avenue unless he paid the specified charges.

■ The City's ordinances here involved were enacted pursuant to former section 713 now section 35701 of the Vehicle Code.[13] Said section provides in pertinent part: "(a) Any city may by ordinance prohibit the use of a street to be described in the ordinance by any commercial vehicle or by any vehicle exceeding a maximum gross weight limit to be specified in the ordinance, . . ." The grant to cities of authority to legislate in this field is therefore clear. (*McCammon* v. *City of Redwood City* (1957) 149 Cal.App.2d 421, 424 [308 P.2d 831]; *Neary* v. *Town of Los Altos Hills* (1959) 172 Cal.App.2d 721, 726 [343 P.2d 155]; *Skyline Materials, Inc.* v. *City of Belmont* (1961) 198 Cal.App.2d 449, 453-454 [18 Cal.Rptr. 95].) The crucial question confronting us is whether those portions of the ordinances struck down by the trial court

[10]Hereafter, unless otherwise indicated, all section references are to the Vehicle Code.

[11]See fns. 5 and 6, *ante*.

[12]There is some confusion in the findings on this point. While paragraph 4 of the conclusions of law pertaining to the fifth count refers to "City Code 641, 703, 766 and Sections 16.72 and 16.74" (641, 703 and 746 being the numerical designation of the *ordinances* underlying the sections of City's Code), it is obvious from paragraphs 5 and 6 which follow, as well as from paragraph 3 of the "findings" pertaining to the fifth count which precedes (actually a conclusion of law), that the court's determination of illegality is directed only at City Code sections 16.72 and 16.74.

[13]The new Vehicle Code was enacted by the Legislature in 1959 and became effective September 18, 1959.

which provide for the payment of two cents per ton for each ton hauled on San Bruno Avenue are a valid exercise of the police power within the compass of such legislative grant. Defendants contend before us (1) that plaintiff failed to meet the burden of proof which the law casts upon a person attacking the validity of a legislative enactment; and (2) in any event the court wrongfully excluded certain defense testimony on the issue of damages.

█ We said in *Thain* v. *City of Palo Alto* (1962) 207 Cal.App.2d 173, 186 [24 Cal.Rptr. 515] : "Where it is urged that a municipal ordinance does not constitute a proper exercise of the police power, the inquiry of the court is limited to determining (1) whether the object of the ordinance is one for which the police power may be properly invoked and, if so, (2) whether the ordinance bears a reasonable and substantial relation to the object sought to be attained." (In accord: *Silver* v. *City of Los Angeles* (1963) 217 Cal.App.2d 134, 139 [31 Cal.Rptr. 545] ; *Lynch Meats of Oakland, Inc.* v. *City of Oakland* (1961) 196 Cal.App.2d 104, 107 [16 Cal.Rptr. 302] ; cf. *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141, 146 [346 P.2d 737].) █ In the exercise of its police power a legislative body is vested with a broad discretion to determine not only what the public interests require but what measures are necessary for the protection of such interests. (*In re Miller* (1912) 162 Cal. 687, 693 [124 P. 427] ; *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479] ; *Justesen's Food Stores, Inc.* v. *City of Tulare* (1941) 43 Cal.App.2d 616, 621 [111 P.2d 424] ; *Thain* v. *City of Palo Alto, supra,* 207 Cal. App.2d at p. 187.) Every intendment is to be indulged in by the courts in favor of the validity of its exercise. (*In re Miller, supra,* 162 Cal. at pp. 695-696; *Jardine* v. *City of Pasadena* (1926) 199 Cal. 64, 72 [248 P. 225, 48 A.L.R. 509] ; *Miller* v. *Board of Public Works, supra*; *Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 338-339 [175 P.2d 542] ; *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 990].)

█ The determination by the legislative body of the facts warranting its action will not be set aside or disregarded by the courts unless the legislative decision is clearly and palpably wrong and such error appears beyond a rational doubt from facts or evidence which cannot be controverted. (*In re Spencer* (1906) 149 Cal. 396, 400 [86 P. 896] ; *In re Miller, supra,* 162 Cal. at p. 696 ; *Jardine* v. *City of Pasadena, supra,*

199 Cal. 64, 72.) The courts will not nullify laws enacted under the police power unless they are manifestly unreasonable, arbitrary or capricious, having no real or substantial relation to the public health, safety, morals or general welfare. (*Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 490; *Magruder* v. *City of Redwood City* (1928) 203 Cal. 665, 672 [265 P. 806]; *Consolidated Rock Products Co.* v. *City of Los Angeles* (1962) 57 Cal.2d 515, 522-523 [20 Cal.Rptr. 638, 370 P.2d 342]; *Justesen's Food Stores, Inc.* v. *City of Tulare, supra,* 43 Cal.App.2d 616, 621; *Thain* v. *City of Palo Alto, supra,* 207 Cal.App.2d 173, 187.) ▮ A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body if there is any reasonable justification for the latter's action. (*Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 490, 495; *Wilkins* v. *City of San Bernardino, supra,* 29 Cal.2d 332, 338-340; *Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 461; *Consolidated Rock Products Co.* v. *City of Los Angeles, supra;* *Justesen's Food Stores, Inc.* v. *City of Tulare, supra,* 43 Cal.App.2d 616, 621; *Thain* v. *City of Palo Alto, supra,* 207 Cal.App.2d 173, 187.) If reasonable minds might differ as to the reasonableness of the ordinance (*In re Miller, supra,* 162 Cal. 687, 696; *Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 490; *Justesen's Food Stores, Inc.* v. *City of Tulare, supra; Thain* v. *City of Palo Alto, supra; Silver* v. *City of Los Angeles, supra,* 217 Cal.App.2d 134, 139) or if the reasonableness of the ordinance is fairly debatable (*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 462; *Consolidated Rock Products Co.* v. *City of Los Angeles, supra; Skyline Materials, Inc.* v. *City of Belmont, supra,* 198 Cal.App.2d 449, 455), the ordinance must be upheld. As the court said in *Lockard*: "In considering the scope or nature of appellate review in a case of this type we must keep in mind the fact that the courts are examining the act of a coordinate branch of the government— the legislative—in a field in which it has paramount authority, and not reviewing the decision of a lower tribunal or of a fact-finding body. Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties." (33 Cal.2d 453, 461.)

▮ In the case before us, the trial court nullified the particular sections of the City's code because it concluded essentially that they imposed a charge for a permit to haul

over San Bruno Avenue in excess of the amount necessary to indemnify the City for any damages to that street. The court found that the payment made by plaintiff "was intended for the purpose of reimbursing the City of San Bruno for cost of repairs for damage to the streets and particularly San Bruno Avenue, caused by plaintiff; that defendant City of San Bruno did not at any time make any repairs to said San Bruno Avenue, caused by plaintiff, nor has defendant any record of damage to said street; that plaintiff did not at any time injure or damage said San Bruno Avenue or any other street in the City limits . . ."[14] These findings are in conflict with the legislative determination not merely implicit in but expressly declared by the City code sections involved. Section 16.72 of the City Code[15] in essence is a determination by the City's legislative body that trucks weighing 27,000 pounds or over *will* damage San Bruno Avenue and that a payment by a permittee at the rate of two cents per ton for each ton hauled on said street will reasonably compensate the City for all damages by such trucks. Additionally, the ordinance (#641 as found in City Code, § 16.72) specifically states that "*It is found upon investigation* that payment of said sum *is necessary* to protect said highway from the actual damages and injury resulting from the operation of such trucks, and *by reason of the difficulty in computing such damages,* two cents (2c) *is found,* in advance, *to be reasonable compensation* for the use of said highway as a condition of operation of said trucks." (Italics added.)

We must determine whether the record before us shows a reasonable basis for this legislative determination. If the record shows that the question is fairly debatable or one as to which reasonable minds may differ, the legislative determination will not be disturbed. (*In re Miller, supra,* 162 Cal. 687, 696; *Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 490; *Justesen's Food Stores, Inc.* v. *City of Tulare, supra,* 43 Cal.App.2d 616, 621; *Thain* v. *City of Palo Alto, supra,* 207 Cal.App.2d 173, 187; *Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 462; *Skyline Materials, Inc.* v. *City of Belmont,*

---

[14]Immediately thereafter follows the court's "finding" that the particular sections of the code "are illegal and in contravention of public policy" on five specified grounds, obviously a conclusion which does not lose its characteristic as such by being placed among the findings of fact. (See *Solley* v. *Solley* (1964) 227 Cal.App.2d 522, 525-526 [38 Cal.Rptr. 802], fn. and cases there cited.) This is duplicated by a subsequent conclusion of law. It is of course ineffective as a finding supplementing those already noted.

[15]See fn. 5, *ante.*

*supra,* 198 Cal.App.2d 449, 455.) The ordinances involved were presumed to be valid (*In re Petersen* (1958) 51 Cal.2d 177, 182 [331 P.2d 24], appeal dismissed (1959) 360 U.S. 314 [3 L.Ed.2d 1259, 79 S.Ct. 1294] ; *Thain* v. *City of Palo Alto, supra,* 207 Cal.App.2d at p. 186) and the burden of proof was on the plaintiff as the party attacking their validity to show their invalidity. (*Hopkins* v. *Galland Mercantile Laundry Co.* (1933) 218 Cal. 130, 133-134 [21 P.2d 553] ; *Contra Costa Water Co.* v. *City of Oakland* (1911) 159 Cal. 323, 335 [113 P. 668] ; *Sunny Slope Water Co.* v. *City of Pasadena* (1934) 1 Cal.2d 87, 92 [33 P.2d 672] ; *People* v. *Johnson* (1954) 129 Cal.App.2d 1, 10 [277 P.2d 45].)

The evidence in the record is sparse. The only evidence adduced by plaintiff as to damage to San Bruno Avenue was his own testimony to the effect that no one ever advised him that the operation of his trucks was causing damage, that he did not notice any damage to the streets, that he did not notice "any change" in streets while he was operating over them and that he did not notice any substantial difference in the condition of San Bruno Avenue on the completion of his hauling operations. Plaintiff called as a witness under Code of Civil Procedure section 2055 Leo Van Dusen, who was both City's Director of Public Works and its City Engineer. Mr. Van Dusen testified that one of his duties as Director of Public Works was to supervise the repair and maintenance of the City's streets; that the City had a crew of repair men but that no definite records were kept as to the repairs which were required—"the crew just does them and that is it"; that if the repairs were made under contracts let by the City, the contracts would be preserved as a record; that no attempts were made to determine the cost of repairs and damage due to the trucks using the streets; that the witness had no idea or record as to the total damage to San Bruno Avenue during the period of plaintiff's hauling but "I could probably compute it." Plaintiff did not ask the witness to do so.

Van Dusen was then called by defendants. After being questioned as to his educational qualifications and his professional background and experience as a civil engineer, he stated that after the commencement of the instant action and at the request of the city attorney he computed the damage caused to San Bruno Avenue by plaintiff's dirt-hauling operations[16]

---

[16]Van Dusen testified that he arrived at his conclusions by using California Division of Highways' method of traffic index; by considering the type of pavement, type of underlying base, total cost of the street, the

and that it was very obvious that "considerable" damage had been done. He also testified that the allowable traffic that a street will bear and the total loads that can be hauled over it are determined by its total structural section and that said structural section is determined by "the type of basement [sic] material, the type of rock, and to a certain extent the thickness of the paving and the type of top covering." Elaborating on this, he compared the thicknesses of San Bruno Avenue and a typical state freeway, testifying that the latter is usually 18 inches or more from the dirt to the top of the pavement with 14 inches of base material, whereas San Bruno Avenue's thickness is 3 inches of pavement on only 8 inches of untreated rock base. However, efforts of defendants to elicit from the witness the "figure" that he "arrived at" representing the amount of damage to San Bruno Avenue met with objections of plaintiff, which were sustained by the court.[17] The trial court also refused to receive similar testimony from L. Dale Mills, senior highway engineer of San Mateo County.[18] We are thus left with a scant record on the subject: testimony of plaintiff that he neither noticed nor was told of any damage and testimony of defendants' witness Van Dusen that the damage was considerable.

█ Under the legal principles set forth above, it was plaintiff's burden to establish the invalidity of the ordinances and to show that the unreasonableness of their provisions dealing with the issuance of permits for San Bruno Avenue was not even a debatable question. Plaintiff was confronted with a legislative determination, made on investigation, that the gross weight limitations could be waived and a permit issued under circumstances calling for a payment of per ton charges by the permittee and that such payments were necessary and reasonable. This was a determination by the City that its street could be protected from the effects of heavy trucking by such regulation.

---

number of tons of dirt moved and the type of truck used; by determining the damage done by one truck on the basis of specified wheel-loads; by computing the estimated 10-year economic life of the street based on the number of wheel-loads it will handle over said period; and by apportioning the wheel-loads applied to the street by plaintiff's trucks against the total wheel-loads the street would take during its 10-year economic life.

[17]In response to the court's question as to whether he had had any previous experience on computing damage, the witness answered negatively. The court excluded the testimony principally because Van Dusen had not been qualified as an expert.

[18]The court seemed to recognize that Mills had been qualified as an expert but refused to receive any proof of damage based on a formula.

Apart from his bare statement that he noticed no damage to or change in the condition of the street, plaintiff presented no evidence to show that the City's regulations for waiving the weight limitation were unreasonable or arbitrary, that heavy loads of the type prohibited could have no possible effect on the pavement, or that there was no rational support for the two cents per ton charge. Additionally, there was evidence in the record that plaintiff's trucking did considerable damage to the street and that the construction of the street made it more susceptible to the effects of heavy trucking than the more massive construction of a freeway. Plaintiff produced no expert testimony attacking the ordinances themselves and his own testimony as to what he noticed about the street is more than counterbalanced by Van Dusen's. In view of the palpable inadequacy of plaintiff's proof, it is being generous to plaintiff to say that the issue as to the reasonableness of the ordinances remains a fairly debatable one. Thus, plaintiff's assertion that defendants "failed to prove damages during the trial" shows a misconception of the crucial issue before us. Similarly the trial court's findings that plaintiff did not damage the street and the City did not repair it, are beside the point and ineffective to nullify the ordinances. Since the question whether the requirements for a permit to haul on San Bruno Avenue were reasonable is a fairly debatable one and one as to which reasonable minds may differ, the legislative determination cannot be disturbed by the courts and the trial court's conclusion that the ordinances constituted an improper exercise of the City's police power cannot be sustained.

■ Plaintiff contended for the first time at oral argument that the City's ordinances regulating trucking were invalid because in enacting them the City failed to comply with the procedure prescribed by section 35705 and that consequently the entire scheme of regulation (City Code, §§ 16.65-16.84) is not applicable to San Bruno Avenue. This argument is grounded on testimony elicited under Code of Civil Procedure section 2055 from defendant Hultberg, the city clerk, that San Bruno Avenue was one of the streets "within the purview of the Highway Users Gas Tax Fund." Section 35705 provides that section 35701 "shall not be applicable to any city street on which money from the State Highway Fund has been or is used for construction or maintenance" unless the legislative body of the city determines to reduce weight limits on such street after notice and hearing as prescribed in such section. Plaintiff at no time objected in the court below to the validity

of the ordinances on the ground that they had. not been enacted in accordance with the above section. Indeed, plaintiff's counsel uttered no word of objection to the introduction in evidence by defendant of certified copies of the ordinances as being those in effect at the times material to the case. As defendants properly argue, if he had done so, they would have had the opportunity to demonstrate the propriety of the city council's action. On this record it will be presumed that the statutory requirements were observed. (*Susanville* v. *Long* (1904) 144 Cal. 362, 366 [77 P. 987] ; 35 Cal.Jur.2d, Municipal Corporations, § 396, p. 204; cf. *Essick* v. *City of Los Angeles* (1950) 34 Cal.2d 614, 621-622 [213 P.2d 492].) In any event, where the point has not been raised in the trial court, we need not consider it on appeal. (*Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 234 [40 Cal.Rptr. 917].)

. In view of the conclusion we have reached on the above issue, it becomes unnecessary to decide whether the trial court erred in excluding the testimony of defense witnesses Van Dusen and Mills. Such evidence, if determined to be admissible, would only further confirm the debatability of the issue and underscore plaintiff's failure to meet the burden of proof cast upon him.

We therefore proceed to consider the several arguments advanced by plaintiff as ''additional grounds'' upon which to sustain the judgment.

*First*: He contends that the state has preempted the field by enacting a comprehensive scheme of regulations set forth in sections 35700-35721. But, as we have previously noted, while the state has occupied the legislative field in the regulation of the weight and allowable load of vehicles (§§ 35550-35655), the Legislature by section 35701 has seen fit to permit municipalities to enter the field and has invested them with power to enact ordinances prescribing maximum gross weight limitations. (*McCammon* v. *City of Redwood City, supra,* 149 Cal.App.2d 421, 424; *Neary* v. *Town of Los Altos Hills, supra,* 172 Cal.App.2d 721, 726; *Skyline Materials, Inc.* v. *City of Belmont, supra,* 198 Cal.App.2d 449, 453-454.) While the Legislature cannot empower a municipality to enact arbitrary or unreasonable ordinances, those before us contain no such infirmity. Since defendant City had the power to prohibit entirely the use of its streets by vehicles exceeding maximum gross weight limitations (§ 35701), it had the included power to waive such limitations by the issuance of a permit subject to compliance with reasonable conditions.

 *Second*: Plaintiff claims that the evidence showed that the purpose of the ordinances was to raise revenue and not to regulate.[19] As we have explained, the ordinances are a proper exercise of the police power and cannot be disturbed by the courts on the ground they are unreasonable. Plaintiff failed to overturn the legislative determination that the payments to be made by the permittee were both necessary and reasonable and did not meet his burden of showing the ordinances to be unreasonable. His efforts to invalidate the enactments upon the grounds that their primary purpose was to raise revenue must fall since "the purpose or motive of the city officials in passing an ordinance is irrelevant to any inquiry concerning the reasonableness of the ordinance. . . . 'If the conditions justify the enactment of the ordinance, the motives prompting its enactment are of no consequence. If the conditions do not justify the enactment, the inquiry as to motive becomes useless.' " (*Sunny Slope Water Co.* v. *City of Pasadena, supra,* 1 Cal.2d 87, 99; *McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 894-895 [264 P.2d 932]; *Silver* v. *City of Los Angeles, supra,* 217 Cal.App.2d 134, 140.)

*Third*: Plaintiff contends that the ordinances are unconstitutional in that he has been denied equal protection of the law, arguing that he was the only one charged or billed by the City during the entire time he was hauling. While the record discloses that plaintiff was the only one billed, it also discloses that of the few permits applied for during the same period, only one other issued to Readymix Trucking Company

[19]Plaintiff buttresses his argument by a reference to defendant City's Resolution 1958-141 introduced in evidence by City and to the court's "findings" and conclusions in respect thereto. The resolution, passed on August 27, 1958 when the older ordinance (No. 746) was in effect, provides that the two-cent fee "shall be placed in a special fund to be known and designated 'Special Street Work Fund' " and further resolves that "the funds in the Special Street Work Fund shall be used for the laying out, opening, widening, extending, straightening, constructing, improving or altering of city streets, highways, boulevards and public ways and the establishing, modifying or changing the grades thereof and the construction of the necessary pavements, curbs, sidewalks, culverts, bridges, tunnels, viaducts, and other structures, including the acquisition of lands, rights-of-ways or other property necessary for such purpose." The court concluded that the pertinent ordinances (City Code, §§ 16.72 and 16.74) were illegal for the reason, *inter alia,* that the above resolution "provides that the tax money in question is to be used for many other purposes rather than indemnity for repair of actual damage done by plaintiff's trucks, and is for the purpose of raising revenue rather than for regulation; . . ."

involved large hauls.[20] As to Readymix, there was evidence that it was not billed because it conducted its hauling operations over the allowable truck route, except for a period of time during which an injunction against the City was in effect and for an additional one or two-day period. Furthermore, the record shows that the City's policy in issuing permits for San Bruno Avenue was to limit the number of overweight trucks to 60 per hour. Because plaintiff had been issued a permit for 60 loads an hour, it was felt to be in the best interests of the City to deny other permits. Assuming *arguendo* that the City did not bill other truckers for the fee, this would merely show a laxity in the enforcement of the ordinances which would not be sufficient to amount to a denial of equal protection of the law. (*In re Finn* (1960) 54 Cal.2d 807, 812-813 [8 Cal.Rptr. 741, 356 P.2d 685]; *People* v. *Gordon* (1951) 105 Cal.App.2d 711, 721 [234 P.2d 287].)

*Fourth*: It is urged that plaintiff made the payments in connection with the permit under duress and the monies represented thereby were wrongfully collected from him under protest. But, as we have shown, the ordinances are valid and plaintiff is not beyond their reach. He was therefore bound to pay the specified charges and any statements made to him by the City officials that hauling on San Bruno Avenue would result in citation or arrest are beside the point. The court's findings and conclusions to the effect that he paid under duress are ineffective to sustain the judgment. We find no evidentiary support for duress in the legal sense of the word. Essentially the City's officials merely informed plaintiff that it was unlawful to operate any vehicle of excess weight over the streets other than those designated as allowable truck routes. The ordinances so provided (City Code, §§ 16.65-16.66) and officials were merely performing their duty of enforcing the law.

*Fifth*: Plaintiff argues that since he was constructing runways and maintenance facilities used in interstate commerce, he was clothed with the same "immunity from taxation" as an interstate carrier. Even assuming that he was engaged in interstate commerce, he would still be, as he concedes in his brief, subject to reasonable charges. Plaintiff failed to prove that the charges were unreasonable.

*Sixth*: Finally, we take up plaintiff's contention that as a licensed contractor employed in the repair of a public

[20]Actually, although the evidence showed three permits applied for, there is some confusion in the record as to whether they were ever issued.

utility he was exempt from the weight limitations imposed by the City's ordinances by virtue of section 35704. This section provides: "No ordinance adopted by a city to decrease weight limits shall apply to any vehicle owned by a public utility or a licensed contractor while necessarily in use in the construction, installation, or repair of any public utility." It will be recalled however that the trial court ruled against plaintiff on this issue, finding that section 35704 was not applicable because the Airport is *not* a public *utility* but only a public *enterprise*. Thus, despite the fact that he has not appealed from the instant judgment, plaintiff now requests our review of the ruling adverse to him.

It is clear that the trial court's ruling was erroneous, for it is settled that the Airport *is* a public utility. (*City & County of San Francisco* v. *Western Air Lines, Inc.* (1962) 204 Cal.App.2d 105, 130 [22 Cal.Rptr. 216], cert. denied 371 U.S. 953 [9 L.Ed.2d 502, 83 S.Ct. 502].)[21]

We must first determine whether plaintiff is precluded from attacking such error because he has not himself appealed. ▮ While it is the general rule that a successful respondent who has not appealed may not complain of errors (*Phillips* v. *Phillips* (1953) 41 Cal.2d 869, 875 [264 P.2d 926]; see 3 Witkin, Cal. Procedure (1954) p. 2229; 4 Cal.Jur.2d, Appeal and Error, § 552, p. 413) an exception to this rule was created by the revision in 1957 of Code of Civil Procedure section 956.[22] Referring to this amendment, the court in *Central Manufacturing Dist., Inc.* v. *Board of Supervisors* (1960) 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733] said: "This new matter seems to be a codification of the existing rule established by court decisions; they recognize that a respondent may assert a legal theory which, if found to be sound, should result in affirmance notwithstanding appellant's contentions. [Citations.]" In the light of these authorities and of the announced purpose of the above amendment to eliminate

---

[21]Strangely enough, the trial court based its ruling on the decision of the *superior* court in *Western Air Lines* which held that the Airport *is not* a public utility but appears to have ignored the opinion of this court in the same case holding that it *is* a public utility.

[22]Code of Civil Procedure, section 956 was amended to provide: "The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken."

circuity of proceedings (32 State Bar. J. 557), we propose to examine the merits of plaintiff's claim.

As set forth above, section 35704 provides that no city ordinance such as those here involved shall apply ''to any vehicle owned by . . . a licensed contractor *while necessarily in use* in the construction, installation or repair of any public utility.'' (Italics added.) Similarly section 35703 provides that no ordinance adopted pursuant to section 35701 shall prohibit commercial vehicles from entering a restricted street ''when *necessary* for the purpose of making pickups or deliveries of goods . . . or for the purpose of delivering materials'' for the construction of buildings. (Italics added.) ██ It is obvious that the purpose of sections 35701-35704 considered together is to authorize municipalities to prescribe regulations for business and commercial vehicles on city streets in furtherance of the orderly conduct of such traffic, the safety of the residents, the protection and preservation of the streets and the general welfare of the community (*Whyte* v. *City of Sacramento* (1924) 65 Cal.App. 534, 548 [224 P. 1008]) but at the same time to see to it that such vehicles, while subject to restriction, can be used for their proper functions where the vehicles are *necessarily* in such use. ''Necessarily'' means ''in such a way that it cannot be otherwise: . . . inevitably, unavoidably'' (Webster's Third New International Dictionary). Convenience cannot be equated with necessity. The use of the vehicle is not a necessary one if it is merely more convenient, suitable or comfortable or if it merely makes the given task less difficult or onerous.

Furthermore, we think that a persuasive argument can be made to the effect that under section 35704 the Legislature intended to exempt from municipal weight limitations only those vehicles necessarily in use in constructing or repairing public utilities which are located on or adjacent to the city streets, as for example water, gas and electricity, and did not intend to confer the exemption on vehicles used in constructing or repairing a public utility located outside and furnishing no direct service to the city, albeit they might travel through the city to such construction or repair site. This interpretation of section 35704 would be in harmony with the obvious intendment of section 35703 which confers an exemption on commercial vehicles making pickups or deliveries of goods on or along the city's streets and not merely traversing such streets to make pickups or deliveries outside city limits.

Under the above interpretation, plaintiff's trucks could not qualify for the exemption. In any event, we need not resolve the present issue on such basis.

Since the trial court concluded that the Airport was not a public utility, it apparently had no occasion to make a finding as to whether plaintiff's trucks were "necessarily in use" within the scope of the above section. However, the evidence considered in the light most favorable to plaintiff falls far short of establishing such necessity. Plaintiff testified that he selected the route down San Bruno Avenue because it was the shortest and most direct route. This shows only that it was more convenient for him to haul on such street. The record reflects that he was not confined to San Bruno Avenue but that he had an alternate course to the Airport over allowable truck routes. The mere fact that such alternate route may be longer, more inconvenient or may involve more expense does not establish that the use of San Bruno Avenue is necessary. (*McCammon* v. *City of Redwood City, supra,* 149 Cal.App.2d 421, 424-425, 427; *Skyline Materials, Inc.* v. *City of Belmont, supra,* 198 Cal.App.2d 449, 456-458.) In our disposition of the present issue plaintiff is therefore not prejudiced by the absence of a finding since any finding would be adverse to him. (*Arsenian* v. *Meketarian* (1956) 138 Cal.App.2d 627, 633 [292 P.2d 293]; *Greenberg* v. *Hastie* (1962) 202 Cal.App.2d 159, 173-174 [20 Cal.Rptr. 747].) We hold that the provisions of section 35704 are not applicable and that plaintiff was not exempt from the operation of defendant City's ordinances.

We therefore arrive at these final conclusions. Since the City's ordinances are valid and legal enactments and plaintiff is not exempt from their operation and since the recovery awarded plaintiff by the trial court cannot be sustained on the alternate grounds urged by him, the judgment in favor of plaintiff and against defendants on the complaint must be reversed. For the same reasons, the judgment denying relief to defendant City on its cross-complaint must be reversed since defendant and cross-complainant City is entitled to recover from plaintiff and cross-defendant at least the balance due at the rate of two cents per ton under the provisions of the ordinance. The record reflects that this is the sum of $26,607.43.[23]

---

[23]Such amount can be computed according to the present record. As pointed out earlier, the parties stipulated that tht total amount hauled was 3,016,100.2 tons. On motion for new trial defendants appear to have revised this figure to 3,010,000 tons. At the rate of two cents per ton, this would produce a total charge of $60,200. The parties also agreed that

While the City's cross-complaint initially sought different amounts of damages in the alternative (see fn. 9, *ante*), the record indicates that at the trial defendant City sought recovery only of the amount due as "assessed" by the City pursuant to the rate per ton provided in the ordinance.[24] Accordingly, we find nothing in the record which impels us to order a new trial.

The attempted appeal from the order denying defendants' motion for a new trial is dismissed. The judgment is reversed and the cause is remanded with directions to the trial court to amend its findings of fact and conclusions of law in conformity with the views herein expressed and to enter judgment ordering that plaintiff take nothing by his complaint and that defendant City of San Bruno have judgment on its cross-complaint against plaintiff and cross-defendant for the sum of $26,607.43, together with interest as provided by law and costs. Appellants shall recover costs on appeal.

Molinari, J., and Sims, J., concurred.

A petition for a rehearing was denied November 14, 1966, and respondent's petition for a hearing by the Supreme Court was denied December 21, 1966. Sullivan, J., did not participate therein.

---

plaintiff's payments to the City amounted to $33,592.57, leaving a balance due from plaintiff of $26,607.43. This last amount appears in the findings of fact and conclusions of law as the "additional assessment" made by defendants against plaintiff which the court found plaintiff was not obligated to pay.

[24]This is confirmed by the instant record which contains a memorandum submitted to the trial judge at the close of the evidence concluding: "we ask the Court to compensate the City for the damage done to San Bruno Avenue in the sum of 2c per ton times *3,016,100* tons or $60,322.20. Plaintiff has already paid *$35,252.97*, thus the City prays for a judgment in the sum of *$27,069.03*." The italicized figures are obvious discrepancies (see fn. 23, *ante*). These appear to have been subsequently corrected by the City as is evidenced by its reference to a balance due of *$26,607.43* in its proposed counterfindings and the court's reference to such figure as the amount assessed in the findings of fact and conclusions of law finally filed.