[No. A129094. First Dist., Div. One. Apr. 5, 2011.]

JAMES H. DISNEY, Plaintiff and Appellant, v.
CITY OF CONCORD et al., Defendants and Respondents.

### COUNSEL

James H. Disney for Plaintiff and Appellant.

Craig Labadie, City Attorney; Burke, Williams & Sorensen, Thomas B. Brown and J. Leah Castella for Defendants and Respondents.

### OPINION

**MARCHIANO, P. J.**—The City of Concord, after considerable debate, adopted an ordinance amending its rules for storage of recreational vehicles on residential property. Attorney in propria persona James H. Disney (Disney) sued the City of Concord and the members of its city council (collectively, Concord) to have the ordinance declared unconstitutional, and to enjoin its enforcement. The trial court granted Concord's motion for judgment on the pleadings. We conclude that Disney's arguments against the ordinance lack merit, and affirm the judgment for Concord.

## I. BACKGROUND

Concord has regulated storage of trailers and boats on front yards since at least 1964. A 1992 ordinance restricting storage and parking of recreational vehicles in residential yards and driveways was codified as section 122-744

of the Concord Municipal Code and remained on the books until 2008. The ordinance provided, among other things, that a recreational vehicle could not be stored on a driveway or in a front yard, or in a side yard except behind an opaque fence, or in an interior side yard if it encroached into a required setback area. Concord stopped enforcing the ordinance in 1994, and allowed motor homes, campers, boats and other vehicles used primarily for recreational purposes to be stored on driveways if there were no complaints from the neighbors, the vehicles did not encroach on pedestrian or vehicular traffic or sight lines, and the vehicles were not so large as to interfere with the use and enjoyment of adjacent properties.

Concord began enforcing the ordinance in June 2007, and left notices at 243 properties where recreational vehicles were observed parked in driveways. Enforcement was suspended in July 2007 after complaints were raised at a city council meeting. A recreational vehicle citizen's task force (Task Force), consisting of nine residents and two city council members, was formed in January 2008 to study the issue. After a number of meetings, the Task Force voted unanimously to recommend allowing any number of recreational vehicles on a property if they were stored behind a six-foot fence and only one vehicle was visible and removing all setback restrictions in side and rear yards to allow for recreational vehicle storage. The Task Force voted six to five to recommend prohibiting recreational vehicles from being stored in front yards and allowing recreational vehicles currently stored in front yards to remain there for up to one year if they were registered within 60 days of passage of an ordinance. Other recommendations also passed by a divided vote.

The Task Force recommendations were discussed at meetings of the city council in July 2008 and of the planning commission in September 2008, where Disney and other residents voiced their views. Based on the Task Force recommendations, the city council's responses to the recommendations, and a survey of 18 other municipalities in the county, the planning commission proposed ordinance No. 08-7, with new rules governing recreational vehicle parking and storage.

The proposed ordinance was presented to the city council at an October 27, 2008 meeting, along with a report recounting the history of the measure. After hearing the comments of Disney and other residents at the meeting, the city council voted to introduce the proposed ordinance with modifications. Ordinance No. 08-7 was approved by the city council on December 1, 2008, after Disney again voiced his objections.

Ordinance No. 08-7 amends prior restrictions in eight respects:

1. It expands the definition of recreational vehicles to include boats and other recreational equipment.

2. It allows only two recreational vehicles on residential property.

3. It deletes all setback restrictions for side and rear yards to accommodate recreational vehicle storage.

4. It provides that recreational vehicles may be stored in side and rear yards behind a six-foot high opaque fence.

5. It prohibits recreational vehicle storage on front yards and driveways, subject to a grandfathering provision that gives owners of recreational vehicles as of the effective date of the ordinance 12 months to obtain a permit to store one recreational vehicle on a driveway or a parking pad adjacent to the driveway. The permit covers replacement recreational vehicles purchased by the permit holder, but the permit expires when the permit holder sells or ceases to occupy the residence.

6. It specifies maintenance standards for recreational vehicles in public view.

7. It imposes setback requirements for recreational vehicles stored on driveways and parking pads, which, as explained by the planning commission staff, are based on sight distance considerations related to vehicular and pedestrian safety.

8. It increases from 24 hours to 72 hours the length of time a recreational vehicle can be parked in a driveway for purposes of loading or unloading before or after a trip.

Disney filed suit against Concord seeking to thwart enforcement of the ordinance. Concord's motion for judgment on the pleadings was granted without leave to amend. Disney moved for reconsideration of the ruling and for leave to file an amended complaint. The court denied the motions by order filed on June 28, 2010,[1] and this appeal ensued.

## II.  DISCUSSION

Disney contends that the court erred in granting the motion for judgment on the pleadings, and in denying leave to amend the complaint. The ruling on

---

[1] Although a judgment for Concord was filed on March 22, 2010, we construe the June 28, 2010 order—which stated that the tentative ruling on the motion for judgment on the pleadings "shall become the order of the Court," and that "[j]udgment of dismissal shall be entered accordingly"—to be the final judgment in the case.

the motion for judgment on the pleadings is reviewed "de novo to determine whether the complaint states a cause of action as a matter of law." (*Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1254 [2 Cal.Rptr.3d 739].) Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion. (*Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 136 [48 Cal.Rptr.3d 836].)

■ Disney's main argument is that the ordinance exceeded Concord's police power. As this court stated in *Ratkovich v. City of San Bruno* (1966) 245 Cal.App.2d 870 [54 Cal.Rptr. 333] (*Ratkovich*): " 'Where it is urged that a municipal ordinance does not constitute a proper exercise of the police power, the inquiry of the court is limited to determining (1) whether the object of the ordinance is one for which the police power may be properly invoked and, if so, (2) whether the ordinance bears a reasonable and substantial relation to the object sought to be attained.' [Citations.] In the exercise of its police power a legislative body is vested with a broad discretion to determine not only what the public interests require but what measures are necessary for the protection of such interests. [Citations.] Every intendment is to be indulged in by the courts in favor of the validity of its exercise. [Citations.]

"The determination by the legislative body of the facts warranting its action will not be set aside or disregarded by the courts unless the legislative decision is clearly and palpably wrong and such error appears beyond a rational doubt from facts or evidence which cannot be controverted. [Citations.] The courts will not nullify laws enacted under the police power unless they are manifestly unreasonable, arbitrary or capricious, having no real or substantial relation to the public health, safety, morals or general welfare. [Citations.] A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body if there is any reasonable justification for the latter's action. [Citations.] If reasonable minds might differ as to the reasonableness of the ordinance [citations] or if the reasonableness of the ordinance is fairly debatable [citations], the ordinance must be upheld. . . . 'In considering the scope or nature of appellate review in a case of this type we must keep in mind the fact that the courts are examining the act of a coordinate branch of the government—the legislative—in a field in which it has paramount authority, and not reviewing the decision of a lower tribunal or of a factfinding body. Courts have nothing to do with the wisdom of laws or regulations, and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties.' [Citation.]" (*Ratkovich, supra*, 245 Cal.App.2d at pp. 878–879.)

■ While portions of the ordinance in question addressed safety issues, the record shows that the ordinance was adopted primarily out of concern for

community aesthetics. It has been settled since *Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 858, footnote 5 [164 Cal.Rptr. 510, 610 P.2d 407] (*Metromedia*) that cities can use their police power to adopt ordinances for aesthetic reasons.[2] The court in *Metromedia* upheld billboard restrictions, holding that "even if, as plaintiffs maintain, the principal purpose of the ordinance is not to promote traffic safety but to improve the appearance of the community, such a purpose falls within the city's authority under the police power." (26 Cal.3d at p. 860.) " 'The concept of the public welfare is broad and inclusive. [Citation.] The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the Legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.' " (*Id.* at p. 861.)

■ The issue Disney raises has been persuasively addressed in an Attorney General opinion. The opinion noted that ordinances restricting parking on private property are "enacted for purposes of promoting traffic safety or enhancing the appearance of a city or county" (75 Ops.Cal.Atty.Gen. 239, 241 (1992)), and that under *Metromedia, supra,* 26 Cal.3d 848 and other cases "[r]egulations to further these two goals fall within the permissible bounds of the police power of a city or county." (75 Ops.Cal.Atty.Gen., *supra,* at p. 241.) The opinion thus broadly concluded that a city "may generally prohibit by ordinance the parking of particular categories of vehicles on private property . . . ." (*Id.* at p. 240.) The opinion further specifically concluded that ordinances such as the one here—"[b]light control . . . ordinances [that] typically prohibit . . . the parking of trailers, motor homes, and recreational vehicles in front yard setback areas (which may or may not include driveways) for more than a certain length of time"—are constitutional. (*Id.* at pp. 243–244.)

"Blight" may be in the eye of the beholder, but the aesthetic concerns underlying ordinance No. 08-7 are widely shared and we have no basis to question their legitimacy. (*Ratkovich, supra,* 245 Cal.App.2d at pp. 878–879.) Concord's survey of other cities in the county showed that nearly all of them regulate the storage of recreational vehicles on private property to some extent. As the Attorney General observed almost 20 years ago, ordinances like the one here are "typical," and Disney identifies no authority that calls their constitutionality into doubt.

This case is similar to *Kucera v. Lizza* (1997) 59 Cal.App.4th 1141 [69 Cal.Rptr.2d 582] (*Kucera*), where Tiburon's tree trimming ordinance was challenged. The defendant "cite[d] the ordinance's impact on his 'bundle of

---

[2] *Metromedia* was reversed on other grounds in *Metromedia, Inc. v. San Diego* (1981) 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882].

rights' as a property owner, including the right to possess and use his property to the exclusion of others," but the court pointed out that " '[a]esthetic conditions have long been held to be valid exercises of the city's traditional police power, and do not amount to a taking merely because they might incidentally restrict a use, diminish the value, or impose a cost in connection with the property. [Citations.]' " (*Id.* at p. 1149.) The ordinance thus did not deprive the defendant of substantive due process, a conclusion that obtains equally here.

The Tiburon ordinance "d[id] not wholly proscribe the landscaping use in question; it only control[led] the unreasonably obstructive growth of trees in situations limited by guidelines." (*Kucera, supra,* 59 Cal.App.4th at p. 1149.) Similarly here, ordinance No. 08-7 does not preclude storage of recreational vehicles on residential property, it simply limits that use and at most requires the owners of such vehicles to store them elsewhere. (See *People v. Tolman* (1980) 110 Cal.App.3d Supp. 6, 10–11 [168 Cal.Rptr. 328] [upholding an ordinance that prohibited storage of large commercial vehicles in residential areas and prevented defendant from keeping her truck in her driveway; "the ordinance does not deprive defendant of her investment in either her house or her truck. It just means that she will have to park her truck elsewhere."].) Ordinance No. 08-7 includes a grandfathering provision to ameliorate hardship, and residential vehicle owners can seek variances if further relief from the restrictions is necessary.

Another analogous case is *Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166 [81 Cal.Rptr.2d 324], where a permit to construct an addition to a residence was denied on aesthetic grounds, and the plaintiff claimed a denial of equal protection. "Under the rational relationship test for land use decisions, an equal protection claim will be rejected if the ' "wisdom [of the decision] is at least fairly debatable and it bears a rational relationship to a permissible state objective." ' " (*Id.* at p. 187.) No denial of equal protection occurred because the project "was rejected for transgressing aesthetic considerations, which are legitimate state objectives," and the record showed that the wisdom of the decision was at least fairly debatable. (*Ibid.*) The same reasons dictate the same conclusion here.

Disney argues that the ordinance is bad policy because it discourages recreation. To quote from a portion of that argument: "Recreation is restorative, refreshing, and often breathes fresh air into a sometimes humdrum life. Recreation reconstitutes the mind and tends to improve one's attitude. It enriches life. Recreation teaches lessons to children and grandchildren about nature, water falls and big trees. It teaches that some plants sleep in winter, it teaches about minnows and frogs, about chipmunks and squirrels, snow and fog, the ocean and tide pools, shells on a beach . . . can't understand why

anybody would want to road-block recreation." While we can appreciate the sincerity of these sentiments, it is not our province to weigh the wisdom of the ordinance. (*Ratkovich, supra*, 245 Cal.App.2d at pp. 878–879.)

■ Disney contends that the ordinance represents improper spot zoning. " 'Spot zoning occurs where a small parcel is restricted and given lesser rights than the surrounding property . . . .' " (*Consaul v. City of San Diego* (1992) 6 Cal.App.4th 1781, 1801 [8 Cal.Rptr.2d 762].) Ordinance No. 08-7 is not spot zoning because it applies to an entire class of property owners citywide.

We have considered Disney's other arguments, such as claims that the ordinance is an ex post facto law or bill of attainder, and find them to be without merit.

Since no justification for overturning the ordinance has been identified, denying leave to amend the complaint was not an abuse of discretion. (See *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1465 [72 Cal.Rptr.2d 464].)

The trial court correctly granted judgment on the pleadings.

## III.  DISPOSITION

The judgment is affirmed.

Dondero, J., and Banke, J., concurred.

On May 2, 2011, the opinion was modified to read as printed above.