# IN THE SUPREME COURT OF CALIFORNIA

T-MOBILE WEST LLC et al.,
Plaintiffs and Appellants,

v.

CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

S238001

First Appellate District, Division Five
A144252

San Francisco City and County Superior Court
CGC-11-510703

April 4, 2019

Justice Corrigan authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

T-MOBILE WEST LLC v. CITY AND COUNTY OF SAN FRANCISCO

S238001


Opinion of the Court by Corrigan, J.


By ordinance the City and County of San Francisco (the City) requires wireless telephone service companies to obtain permits to install and maintain lines and equipment in public rights-of-way. Some permits will not issue unless the application conforms to the City's established aesthetic guidelines. Plaintiffs assert a facial challenge urging that (1) the ordinance is preempted by state law and (2) even if not preempted, the ordinance violates a state statute. The trial court and the Court of Appeal rejected both arguments. We do likewise.

## I. BACKGROUND

Plaintiffs are telecommunications companies. They install and operate wireless equipment throughout the City, including on utility poles located along public roads and highways.[1] In January 2011, the City adopted ordinance No.

---

[1] The plaintiffs named in the operative complaint were T-Mobile West Corporation, NextG Networks of California, Inc., and ExteNet Systems (California) LLC. T-Mobile West Corporation has also appeared in this litigation as T-Mobile West LLC. NextG Networks of California, Inc. has also appeared as Crown Castle NG West LLC and Crown Castle NG West Inc. (*T-Mobile West LLC v. City and County of San Francisco* (2016) 3 Cal.App.5th 334, 340, fn. 3 (*T-Mobile West*).)

12-11 (the Ordinance),[2] which requires "any Person seeking to construct, install, or maintain a Personal Wireless Service Facility in the Public Rights-of-Way to obtain" a permit. (S.F. Pub. Works Code, art. 25, § 1500, subd. (a).) In adopting the Ordinance, the board of supervisors noted that the City "is widely recognized to be one of the world's most beautiful cities," which is vital to its tourist industry and an important reason that residents and businesses locate there. Due to growing demand, requests from the wireless industry to place equipment on utility poles had increased. The board opined that the City needed to regulate the placement of this equipment to prevent installation in ways or locations "that will diminish the City's beauty." The board acknowledged that telephone corporations have a right, under state law, "to use the public rights-of-way to install and maintain 'telephone lines' and related facilities required to provide telephone service." But it asserted that local governments may "enact laws that limit the intrusive effect of these lines and facilities."

The Ordinance specifies areas designated for heightened aesthetic review. (See S.F. Pub. Works Code, art. 25, § 1502.) These include historic districts and areas that have " 'good' " or " 'excellent' " views or are adjacent to parks or open spaces.

---

Not all plaintiffs install and operate the same equipment, but there is no dispute that they are all " 'telephone corporation[s],' " as that term is defined by Public Utilities Code section 234, nor that all of the equipment in question fits within the definition of " 'telephone line' " in Public Utilities Code section 233. All unspecified statutory references are to the Public Utilities Code.

[2]     The Ordinance was codified as article 25 of the San Francisco Public Works Code.

(*Ibid*.) The Ordinance establishes various standards of aesthetic compatibility for wireless equipment. In historic districts, for example, installation may only be approved if the City's planning department determines that it would not "significantly degrade the aesthetic attributes that were the basis for the special designation" of the building or district. (S.F. Pub. Works Code, art. 25, § 1502; see also *id*., §§ 1508, 1509, 1510.) In "view" districts, proposed installation may not "significantly impair" the protected views.[3] (S.F. Pub. Works Code, art. 25, § 1502.)

Plaintiffs sought declaratory and injunctive relief. The operative complaint alleged five causes of action, only one of which is at issue.[4] It alleges the Ordinance and implementing regulations are preempted by section 7901 and violate section 7901.1. Under section 7901, "telephone corporations may construct . . . telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt

---

[3]    The Court of Appeal discussed other provisions of a previous enactment of the Ordinance that are not in issue here. (*T-Mobile West*, *supra*, 3 Cal.App.5th at pp. 340-341.) We review the current version of the Ordinance. (*Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6.)

[4]    Plaintiffs' first, second, fourth, and fifth causes of action are not before us. The first cause of action was resolved in plaintiffs' favor by summary adjudication. The second was dismissed by plaintiffs before trial. The fourth was resolved in City's favor by summary adjudication. And the fifth was resolved in plaintiffs' favor after trial.

the navigation of the waters."[5]  According to plaintiffs, section 7901 preempted the Ordinance to the extent it allowed the City to condition permit approval on aesthetic considerations.

Section 7901.1 sets out the Legislature's intent, "consistent with Section 7901, that municipalities shall have the right to exercise reasonable control as to the time, place, and manner in which roads, highways, and waterways are accessed." (§ 7901.1, subd. (a).)  But section 7901.1 also provides that, to be considered reasonable, the control exercised "shall, at a minimum, be applied to all entities in an equivalent manner." (§ 7901.1, subd. (b).)  Plaintiffs alleged the Ordinance violated subdivision (b) of section 7901.1 by treating wireless providers differently from other telephone corporations.

The trial court ruled that section 7901 did not preempt the challenged portions of the Ordinance and rejected plaintiffs' claim that it violated section 7901.1.  The Court of Appeal affirmed.  (*T-Mobile West*, *supra*, 3 Cal.App.5th at pp. 339, 359.)

## II.  DISCUSSION

### A.  Section 7901 Does Not Preempt the Ordinance

#### 1.  Preemption Principles

Under the California Constitution, cities and counties "may make and enforce within [their] limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.)  General laws are those that apply statewide and deal with matters of statewide

---

[5]  This case does not involve the construction or installation of lines or equipment across state waters.  Thus, we limit our discussion to lines installed along public roads and highways, which we refer to collectively as public roads.

concern. (*Eastlick v. City of Los Angeles* (1947) 29 Cal.2d 661, 665.) The "inherent local police power includes broad authority to determine, for purposes of the public health, safety, and welfare, the appropriate uses of land within a local jurisdiction's borders." (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 738 (*City of Riverside*); see also *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1151 (*Big Creek Lumber*).) The local police power generally includes the authority to establish aesthetic conditions for land use. (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 886; *Disney v. City of Concord* (2011) 194 Cal.App.4th 1410, 1416.)

"[L]ocal legislation that conflicts with state law is void." (*City of Riverside, supra*, 56 Cal.4th at p. 743, citing *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.) A conflict exists when the local legislation " ' " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin-Williams*, at p. 897.) Local legislation duplicates general law if both enactments are coextensive. (*Ibid.*, citing *In re Portnoy* (1942) 21 Cal.2d 237, 240.) Local legislation is contradictory when it is inimical to general law. (*Sherwin-Williams*, at p. 898, citing *Ex parte Daniels* (1920) 183 Cal. 636, 641-648.) State law fully occupies a field "when the Legislature 'expressly manifest[s]' its intent to occupy the legal area or when the Legislature 'impliedly' occupies the field." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1068 (*O'Connell*), citing *Sherwin-Williams*, at p. 898.)

The party claiming preemption has the burden of proof. (*Big Creek Lumber, supra*, 38 Cal.4th at p. 1149.) "[W]hen local government regulates in an area over which it traditionally has

exercised control, such as the location of particular land uses, California courts will presume" the regulation is not preempted unless there is a clear indication of preemptive intent. (*Ibid*., citing *IT Corp. v. Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 93.) Ruling on a facial challenge to a local ordinance, the court considers the text of the measure itself, not its application to any particular circumstances or individual. (*San Francisco Apartment Assn. v. City and County of San Francisco* (2016) 3 Cal.App.5th 463, 487, citing *Pieri v. City and County of San Francisco* (2006) 137 Cal.App.4th 886, 894, which in turn cites *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)[6]

### 2. Analysis

Section 7901 provides that telephone corporations may construct lines and erect equipment along public roads in ways and locations that do not "incommode the public use of the road." We review the statute's language to determine the scope of the rights it grants to telephone corporations and whether, by

---

[6] There is some uncertainty regarding the standard for facial constitutional challenges to statutes and local ordinances. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 218.) Some cases have held that legislation is invalid if it conflicts in the generality or great majority of cases. (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126.) Others have articulated a stricter standard, holding that legislation is invalid only if it presents a total and fatal conflict with applicable constitutional prohibitions. (*Ibid*.; see also *Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1084.) We need not settle on a precise formulation of the applicable standard because, as explained below, we find no inherent conflict between the Ordinance and section 7901. Thus, plaintiffs' claim fails under any articulated standard.

granting those rights, the Legislature intended to preempt local regulation based on aesthetic considerations. These questions of law are subject to de novo review. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724; *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10.)

The parties agree that section 7901 grants telephone corporations a statewide franchise to engage in the telecommunications business.[7] (See *Western Union Tel. Co. v. Visalia* (1906) 149 Cal. 744, 750 (*Visalia*).) Thus, a local government cannot insist that a telephone corporation obtain a *local* franchise to operate within its jurisdiction. (See *Visalia*, at p. 751; see also *Pac. Tel. & Tel. Co. v. City & County of S. F.* (1959) 51 Cal.2d 766, 771 (*Pacific Telephone I*).) The parties also agree that the franchise rights conferred are limited by the prohibition against incommoding the public use of roads, and that local governments have authority to prevent those impacts.

Plaintiffs argue section 7901 grants them more than the mere right to operate. In their view, section 7901 grants them the right to construct lines and erect equipment along public roads so long as they do not obstruct the path of travel. The necessary corollary to this right is that local governments cannot prevent the construction of lines and equipment unless the installation of the facilities will obstruct the path of travel. Plaintiffs urge that the Legislature enacted section 7901 to promote technological advancement and ensure a functioning, statewide telecommunications system. In light of those

---

[7] In this context, a franchise is a "government-conferred right or privilege to engage in specific business or to exercise corporate powers." (Black's Law Dict. (10th ed. 2014) p. 772, col. 2.)

objectives, they contend that their right to construct telephone lines must be construed broadly, and local authority limited to preventing roadway obstructions.

Preliminarily, plaintiffs' argument appears to rest on the premise that the City only has the power to regulate telephone line construction based on aesthetic considerations if section 7901's incommode clause can be read to accommodate that power. That premise is flawed. As mentioned, the City has inherent local police power to determine the appropriate uses of land within its jurisdiction. That power includes the authority to establish aesthetic conditions for land use. Under our preemption cases, the question is not whether the incommode clause can be read to permit the City's exercise of power under the Ordinance. Rather, it is whether section 7901 divests the City of that power.

We also disagree with plaintiffs' contention that section 7901's incommode clause limits their right to construct lines only if the installed lines and equipment would obstruct the path of travel. Contrary to plaintiffs' argument, the incommode clause need not be read so narrowly. As the Court of Appeal noted, the word " 'incommode' " means " 'to give inconvenience or distress to: disturb.' " (*T-Mobile West*, *supra*, 3 Cal.App.5th at p. 351, citing Merriam-Webster Online Dict., available at <http://www.merriam-webster.com/dictionary/incommode> [as of April 3, 2019].)[8]  The Court of Appeal also quoted the definition of "incommode" from the 1828 version of Webster's Dictionary. Under that definition, "incommode" means " '[t]o

___

[8]  All Internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.

give inconvenience to; to give trouble to; to disturb or molest in the quiet enjoyment of something, or in the facility of acquisition.' " (*T-Mobile West*, *supra*, 3 Cal.App.5th at p. 351, citing Webster's Dict. 1828—online ed., available at <http://www.webstersdictionary1828.com/Dictionary/incommod e> [as of April 3, 2019].) For our purposes, it is sufficient to state that the meaning of incommode has not changed meaningfully since section 7901's enactment.[9] Obstructing the path of travel is one way that telephone lines could disturb or give inconvenience to public road use. But travel is not the sole use of public roads; other uses may be incommoded beyond the obstruction of travel. (*T-Mobile West*, at pp. 355-356.) For example, lines or equipment might generate noise, cause negative health consequences, or create safety concerns. All these impacts could disturb public road use, or disturb its quiet enjoyment.

Plaintiffs assert the case law supports their statutory construction. For example, *City of Petaluma v. Pac. Tel. & Tel. Co.* (1955) 44 Cal.2d 284 (*Petaluma*) stated that the "franchise tendered by [section 7901] . . . [is] superior to and free from any grant made by a subordinate legislative body." (*Id.* at p. 287; see also *Pacific Telephone I*, *supra*, 51 Cal.2d at p. 770; *County of Inyo v. Hess* (1921) 53 Cal.App. 415, 425 (*County of Inyo*).)

---

[9] The predecessor of section 7901, Civil Code section 536, was first enacted in 1872 as part of the original Civil Code. (*Anderson v. Time Warner Telecom of California* (2005) 129 Cal.App.4th 411, 419, citing *Sunset Tel. and Tel. Co. v. Pasadena* (1911) 161 Cal. 265, 273.) Civil Code section 536 contained the "incommode" language, as did its predecessor, which was adopted as part of the Statutes of California in 1850. (Stats. 1850, ch. 128, § 150, p. 369.)

Similarly, *Pac. Tel. & Tel. Co. v. City of Los Angeles* (1955) 44 Cal.2d 272 (*City of Los Angeles*), held that the "authority to grant a franchise to engage in the telephone business resides in the state, and the city is without power to require a telephone company to obtain such a franchise unless the right to do so has been delegated to it by the state." (*Id.* at pp. 279-280.)

But these cases do not go as far as plaintiffs suggest. Each addressed the question whether a telephone corporation can be required to obtain a local franchise to operate. (See *Pacific Telephone I*, *supra*, 51 Cal.2d at p. 767; *Petaluma*, *supra*, 44 Cal.2d at p. 285; *City of Los Angeles*, *supra*, 44 Cal. 2d at p. 276; *County of Inyo*, *supra*, 53 Cal.App. at p. 425.) None considered the distinct question whether a local government can condition permit approval on aesthetic or other considerations that arise under the local police power. A permit is, of course, different from a franchise. The distinction may be best understood by considering the effect of the denial of either. The denial of a franchise would completely bar a telephone corporation from operating within a city. The denial of a permit, on the other hand, would simply prevent construction of lines in the proposed manner at the proposed location.

A few published decisions have tangentially addressed the scope of the inherent local police power to regulate the manner and location of telephone line installations. Those cases cut against plaintiffs' proposed construction.

In *Pacific Tel. & Tel. Co. v. City & County of San Francisco* (1961) 197 Cal.App.2d 133 (*Pacific Telephone II*), the City argued it could require a telephone corporation to obtain a local franchise to operate within its jurisdiction because the power to grant franchises fell within its police power. (*Id.* at p. 152.) The

court rejected the City's argument, reasoning that the phrase " 'police power' has two meanings, 'a comprehensive one embracing in substance the whole field of state authority and the other a narrower one including only state power to deal with the health, safety and morals of the people.' " (*Ibid.*)  "Where a corporation has a state franchise to use a city's streets, the city derives its rights to regulate the particular location and manner of installation of the franchise holder's facilities from the narrower sense of the police power.  Thus, because of the state concern in communications, the state has retained to itself the broader police *power of granting franchises*, leaving to the municipalities the narrower police *power of controlling location and manner of installation*." (*Ibid.*, italics added.)

This court, too, has distinguished the power to grant franchises from the power to regulate the location and manner of installation by permit.  In *Visalia, supra*, 149 Cal. 744, the city adopted an ordinance that (i) authorized a telephone company to erect telegraph poles and wires on city streets, (ii) approved the location of poles and wires then in use, (iii) prohibited poles and wires from interfering with travel on city streets, and (iv) required all poles to be of a uniform height. (*Id.* at pp. 747-748.)  The city asserted its ordinance operated to grant the company a " 'franchise,' " and then attempted to assess a tax on the franchise. (*Id.* at p. 745.)  The company challenged the assessment.  It argued that, because the ordinance did not create a franchise, the tax assessment was invalid. (*Id.* at pp. 745-746.)  We concluded the ordinance did not create a local franchise. (*Id.* at p. 750.)  By virtue of its state franchise, "the appellant had the right, of which the city could not deprive it, to construct and operate its lines along the streets of the city." (*Ibid.*)  "[N]evertheless it could not maintain its poles and wires

in such a manner as to unreasonably obstruct and interfere with ordinary travel; and the city had the authority, under its police power, to so regulate the manner of plaintiff's placing and maintaining its poles and wires *as to prevent unreasonable obstruction of travel.*" (*Id.* at pp. 750-751, italics added.) "[T]he ordinance in question was not intended to be anything more . . . than the exercise of this authority to regulate." (*Id.* at p. 751)[10]

Plaintiffs argue the italicized language above shows that local regulatory authority is limited to preventing travel obstructions. But the quoted language is merely descriptive, not prescriptive. *Visalia* involved an ordinance that specifically prohibited interference with travel on city streets, and the court was simply describing the ordinance before it, not establishing the bounds of local government regulatory authority. Moreover, the *Visalia* court did not question the propriety of the ordinance's requirement that all poles be a uniform height, nor suggest that requirement was related to preventing obstructions to travel. Thus, *Visalia* does not support the conclusion that section 7901 was meant to restrict local government power in the manner plaintiffs suggest. The "right of telephone corporations to construct telephone lines in public rights-of-way is not absolute." (*City of Huntington Beach v. Public Utilities Com.* (2013) 214 Cal.App.4th 566, 590 (*City of Huntington Beach*).) Instead, it is a " 'limited right to use the highways . . . only to the extent necessary for the furnishing of services to the

---

[10] *Visalia* interpreted a predecessor statute, Civil Code section 536, which was repealed in 1951 and reenacted as section 7901. (Stats. 1951, ch. 764, pp. 2025, 2194, 2258 [reenacting Civ. Code, former § 536 as Pub. Util. Code, § 7901].)

public.' " (*Ibid.*, quoting *County of L. A. v. Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 387; see also *Pacific Tel. & Tel. Co. v. Redevelopment Agency* (1977) 75 Cal.App.3d 957, 963.)[11]

Having delineated the right granted by section 7901, we now turn to its preemptive sweep. Because the location and manner of line installation are areas over which local governments traditionally exercise control (*Visalia, supra,* 149 Cal. at pp. 750-751), we presume the ordinance is not preempted absent a clear indication of preemptive intent. (*Big Creek Lumber, supra,* 38 Cal.4th at p. 1149.) Plaintiffs put forth a number of preemption theories. They argue the Ordinance is contradictory to section 7901. At oral argument, they asserted the Legislature occupied the field with section 7901, the terms of which indicate that a paramount state concern will not tolerate additional local action. And in their briefs, many of plaintiffs' arguments were focused on what has been labeled, in the federal context, as obstacle preemption.

"The 'contradictory and inimical' form of preemption does not apply unless the ordinance directly requires what the state

---

[11]     The Ninth Circuit has addressed this issue twice, coming to a different conclusion each time. In *Sprint PCS Assets v. City of Palos Verdes Estates* (9th Cir. 2009) 583 F.3d 716, the Ninth Circuit found no conflict between section 7901 and a local ordinance conditioning permit approval on aesthetic considerations. (*Palos Verdes Estates*, at pp. 721-723.) In an unpublished decision issued three years earlier, the Ninth Circuit had reached the opposite conclusion. (*Sprint PCS v. La Cañada Flintridge* (9th Cir. 2006) 182 Fed.Appx. 688, 689.) Due to its unpublished status, the *La Cañada Flintridge* decision carries no precedential value. (*T-Mobile West, supra,* 3 Cal.App.5th at p. 355, citing *Bowen v. Ziasun Technologies, Inc.* (2004) 116 Cal.App.4th 777, 787, fn. 6.)

statute forbids or prohibits what the state enactment demands." (*City of Riverside, supra,* 56 Cal.4th at p. 743, citing *Big Creek Lumber, supra,* 38 Cal.4th at p. 1161.) "[N]o inimical conflict will be found where it is reasonably possible to comply with both the state and local laws." (*City of Riverside,* at p. 743.) As noted, section 7901 grants telephone corporations the right to install lines on public roads without obtaining a local franchise. The Ordinance does not require plaintiffs to obtain a local franchise to operate within the City. Nor does it allow certain companies to use public roads while excluding others. Any wireless provider may construct telephone lines on the City's public roads so long as it obtains a permit, which may sometimes be conditioned on aesthetic approval. Because section 7901 says nothing about the aesthetics or appearance of telephone lines, the Ordinance is not inimical to the statute.

The argument that the Legislature occupied the field by implication likewise fails. Field preemption generally exists where the Legislature has comprehensively regulated in an area, leaving no room for additional local action. (See, e.g., *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1252-1257; *O'Connell, supra,* 41 Cal.4th 1061, 1068-1074.) Unlike the statutory schemes addressed in *American Financial* and *O'Connell,* section 7901 does not comprehensively regulate telephone line installation or provide a general regulatory scheme. On the contrary, section 7901 consists of a single sentence. Moreover, although the granting of telephone franchises has been deemed a matter of statewide concern (*Pacific Telephone I, supra,* 51 Cal.2d at p. 774; *Pacific Telephone II, supra,* 197 Cal.App.2d at p. 152), the power to regulate the location and manner of line installation is generally a matter left to local regulation. The City is not attempting to

regulate in an area over which the state has traditionally exercised control. Instead, this is an area of regulation in which there are " 'significant local interest[s] to be served that may differ from one locality to another.' " (*Big Creek Lumber*, *supra*, 38 Cal.4th at p. 1149.)

*City of Riverside*, *supra*, 56 Cal.4th 729, is instructive. There, the question was whether state statutes designed to enhance patient and caregiver access to medical marijuana preempted a local zoning law banning dispensaries within a city's limits. (*Id*. at pp. 737, 739-740.) An early enactment had declared that physicians could not be punished for recommending medical marijuana and that state statutes prohibiting possession and cultivation of marijuana would not apply to patients or caregivers. (*Id*. at p. 744.) A subsequent enactment established a program for issuing medical marijuana identification cards and provided that a cardholder could not be arrested for possession or cultivation in permitted amounts. (*Id*. at p. 745.) We concluded that the "narrow reach of these statutes" (*ibid*.) showed they did not "expressly or impliedly preempt [the city's] zoning provisions" (*id*. at p. 752).

Preemption was not implied because the Legislature had not tried "to fully occupy the field of medical marijuana regulation as a matter of statewide concern, or to partially occupy this field under circumstances indicating that further local regulation will not be tolerated." (*City of Riverside*, *supra*, 56 Cal.4th at p. 755.) While state statutes took "limited steps toward recognizing marijuana as a medicine," they described "no comprehensive scheme or system for authorizing, controlling, or regulating the processing and distribution of marijuana for medical purposes, such that no room remains for local action." (*Ibid*.) Moreover, there were significant local

interests that could vary by jurisdiction, giving rise to a presumption against preemption. (*Ibid*.)

Similarly, here, the Legislature has not adopted a comprehensive regulatory scheme. Instead, it has taken the limited step of guaranteeing that telephone corporations need not secure a local franchise to operate in the state or to construct local lines and equipment. Moreover, the statute leaves room for additional local action and there are significant local interests relating to road use that may vary by jurisdiction.

Finally, plaintiffs' briefing raises arguments that sound in the theory of obstacle preemption. Under that theory, a local law would be displaced if it hinders the accomplishment of the purposes behind a state law. This court has never said explicitly whether state preemption principles are coextensive with the developed federal conception of obstacle preemption. (See, e.g., *Great Western Shows, Inc. v. County of Los Angeles* (2002) 27 Cal.4th 853, 867-868; cf. *City of Riverside*, *supra*, 56 Cal.4th at pp. 763-765 (conc. opn. of Liu, J.).) But assuming for the sake of argument that the theory applies, we conclude there is no obstacle preemption here.

The gist of plaintiffs' argument is that section 7901's purpose is to encourage technological advancement in the state's telecommunications networks and that, because enforcement of the Ordinance *could* hinder that purpose, the Ordinance is preempted. But no legislation pursues its objectives at all costs. (*Pension Ben. Guar. Corp. v. LTV Corp.* (1990) 496 U.S. 633, 646-647.) Moreover, the Legislature made clear that the goal of technological advancement is not paramount to all others by including the incommode clause in section 7901, thereby leaving room for local regulation of telephone line installation.

Finally, we think it appropriate to consider the Public Utilities Commission's (PUC) understanding of the statutory scheme. In recognition of its expertise, we have consistently accorded deference to the PUC's views concerning utilities regulation. The PUC's "interpretation of the Public Utility Code 'should not be disturbed unless it fails to bear a reasonable relation to statutory purposes and language.' " (*Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 796, quoting *Greyhound Lines, Inc. v. Public Utilities Com.* (1968) 68 Cal.2d 406, 410-411.) Here, the PUC has made determinations about the scope of permissible regulation that are on point.

The state Constitution vests principal regulatory authority over utilities with the PUC, but carves out an ongoing area of municipal control. (Cal. Const., art. XII, § 8.) A company seeking to build under section 7901 must approach the PUC and obtain a certificate of public necessity. (§ 1001; see *City of Huntington Beach, supra*, 214 Cal.App.4th at p. 585.) The certificate is not alone sufficient; a utility will still be subject to local control in carrying out the construction. Municipalities may surrender to the PUC regulation of a utility's relations with its customers (§ 2901), but they are forbidden from yielding to the PUC their police powers to protect the public from the adverse impacts of utilities operations (§ 2902).

Consistent with these statutes, the PUC's default policy is one of deference to municipalities in matters concerning the design and location of wireless facilities. In a 1996 opinion adopting the general order governing wireless facility construction, the PUC states the general order "recognize[s] that primary authority regarding cell siting issues should continue to be deferred to local authorities. . . . The [PUC's] role continues to be that of the agency of last resort, intervening only

when a utility contends that local actions impede statewide goals . . . .” (*Re Siting and Environmental Review of Cellular Mobile Radiotelephone Utility Facilities* (1996) 66 Cal.P.U.C.2d 257, 260; see also *Re Competition for Local Exchange Service* (1998) 82 Cal.P.U.C.2d 510, 544.)[12] The order itself “acknowledges that local citizens and local government are often in a better position than the [PUC] to measure local impact and to identify alternative sites. Accordingly, the [PUC] will generally defer to local governments to regulate the location and design of cell sites . . . .” (PUC, General order No. 159-A (1996) p. 3 (General Order 159A), available at <http://docs.cpuc.ca.gov/PUBLISHED/Graphics/611.PDF> [as of April 3, 2019].)

The exception to this default policy is telling: the PUC reserves the right to preempt local decisions about specific sites “when there is a clear conflict with the [PUC’s] goals and/or statewide interests.” (General Order 159A, *supra*, at p. 3.) In other words, generally the PUC will not object to municipalities dictating alternate locations based on local impacts,[13] but it will step in if statewide goals such as “high quality, reliable and widespread cellular services to state residents” are threatened.

---

[12] In its 1996 opinion adopting general order No. 159-A, the PUC left implicit the portions of the statutory scheme it was applying. In its 1998 opinion, the PUC clarified the respective regulatory spheres in response to arguments based on sections 2902, 7901, 7901.1 and the constitutional provisions allocating authority to cities and the PUC. (See *Re Competition for Local Exchange Service, supra*, 82 Cal.P.U.C.2d at pp. 543–544.)

[13] Among the PUC’s express priorities regarding wireless facility construction is that “the public health, safety, welfare, and zoning concerns of local government are addressed.” (General Order 159A, *supra*, at p. 3.)

(General Order 159A, at p. 3.)  Contrary to plaintiffs' view of the respective spheres of state and local authority, the PUC's approach does not restrict municipalities to judging only whether a requested permit would impede traffic.  Instead, the PUC accords local governments the full scope of their ordinary police powers unless the exercise of those powers would undermine state policies.

Plaintiffs argue our construction of section 7901, and a decision upholding the City's authority to enforce the Ordinance, will "hinder the roll-out of advanced services needed to upgrade networks [and] promote universal broadband" and will "stymie the deployment of 5G networks, leaving California unable to meet the growing need for wireless capacity created by the proliferation of . . . connected devices."  This argument is premised on a hypothetical future harm that is not cognizable in a facial challenge.  (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180; see also *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 267.)

In sum, neither the plain language of section 7901 nor the manner in which it has been interpreted by courts and the PUC supports plaintiffs' argument that the Legislature intended to preempt local regulation based on aesthetic considerations.  The statute and the ordinance can operate in harmony.  Section 7901 ensures that telephone companies are not required to obtain a local franchise, while the Ordinance ensures that lines and equipment will not unreasonably incommode public road use.[14]

---

[14]    We dispose here only of plaintiffs' facial challenge and express no opinion as to the Ordinance's application.  We note, however, that plaintiffs seeking to challenge specific

## B. *The Ordinance Does Not Violate Section 7901.1*

Plaintiffs next contend that, even if not preempted, the Ordinance violates section 7901.1 by singling out wireless telephone corporations for regulation. Section 7901.1 provides in relevant part that, consistent with section 7901, municipalities may "exercise reasonable control as to the time, place, and manner" in which roads are "*accessed*," and that the control must "*be applied to all entities in an equivalent manner*." (§ 7901, subds. (a), (b), italics added.)

Before trial, the parties stipulated to the following facts. First, that the City requires all utility and telephone corporations, both wireless and non-wireless, to obtain temporary occupancy permits to "access" public rights-of-way during the *initial* construction and installation of equipment facilities. These permits are not subject to aesthetic review. Second, that the City requires only wireless telephone corporations to obtain site-specific permits, conditioned on aesthetic approval, for the *ongoing* occupation and maintenance

applications have both state and federal remedies. Under state law, a utility could seek an order from the PUC preempting a city's decision. (General Order 159A, *supra*, at p. 6.) Thus, cities are prohibited from using their powers to frustrate the larger intent of section 7901. (*Pacific Telephone II*, *supra*, 197 Cal.App.2d at p. 146.) Under federal law, Congress generally has left in place local authority over "the placement, construction, and modification of personal wireless service facilities" (47 U.S.C. § 332(c)(7)(A)), but it has carved out several exceptions. Among these, a city may not unduly delay decisions (47 U.S.C. § 332(c)(7)(B)(ii)) and may not adopt regulations so onerous as to "prohibit or have the effect of prohibiting the provision of wireless services" (47 U.S.C. § 332(c)(7)(B)(i)(II)). If a city does so, a wireless company may sue. (*Sprint PCS Assets v. City of Palos Verdes Estates*, *supra*, 583 F.3d at p. 725.)

of equipment facilities in public rights-of-way.  The trial court and the Court of Appeal held that section 7901.1 only applies to *temporary* access to public rights-of-way, during initial construction and installation.  Because the parties had stipulated that the City treats all companies equally in that respect, the lower courts found no violation of section 7901.1.

Plaintiffs argue the plain language of section 7901.1 does not limit its application to temporary access to public rights-of-way.  Rather, the introductory phrase, "consistent with section 7901," demonstrates that section 7901.1 applies to both short- and long-term access.  Plaintiffs also suggest that the legislative history of section 7901.1 supports their position, and that the lower courts' interpretation of section 7901.1 "results in an incoherent approach to municipal authority."

Plaintiffs' arguments are unpersuasive.  Section 7901.1 allows cities to control the time, place, and manner in which roads are "accessed."  (§ 7901.1, subd. (a).)  As the competing arguments demonstrate, the "plain meaning of the word 'accessed' is ambiguous."  (*T-Mobile West*, *supra*, 3 Cal.App.5th at p. 358.)  It could refer only to short-term access, during the initial installation and construction of a telephone equipment facility.  But it could also refer to the longer term occupation of public rights-of-way with telephone equipment. (*Ibid*.)  Though it would be odd for a statute authorizing local control over *permanent* occupations to specifically allow for control over the "time" of such occupations, the statute's plain language does not render plaintiffs' construction totally implausible.

However, the legislative history shows that section 7901.1 only deals with temporary access to public rights-of-way.  "This bill is intended to bolster the cities['] abilities with regard to

*construction management . . . .*" (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 621 (1995–1996 Reg. Sess.) as amended May 3, 1995, p. 3, italics added.) Before section 7901.1's enactment, telephone companies had been taking the "extreme" position, based on their statewide franchises, that "cities [had] absolutely no ability to control construction." (Assem. Com. on Utilities and Commerce, Rep. on Sen. Bill No. 621 (1995–1996 Reg. Sess.) as amended July 7, 1995, p. 2.) Section 7901.1 was enacted to "send a message to telephone corporations that cities have authority to manage their construction, without jeopardizing the telephone [corporations'] statewide franchise." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 621 (1995–1996 Reg. Sess.) as amended May 3, 1995, p. 3.) Under section 7901.1, cities would be able to "plan maintenance programs, protect public safety, minimize public inconvenience, and ensure adherence to sound construction practices." (Assem. Com. on Utilities and Commerce, Rep. on Sen. Bill No. 621 (1995–1996 Reg. Sess.) as amended July 7, 1995, p. 2.)

To accept plaintiffs' construction of section 7901.1, we would have to ignore this legislative history. (*T-Mobile West*, *supra*, 3 Cal.App.5th at p. 358.) Contrary to plaintiffs' argument, construing section 7901.1 in this manner does not render the scheme incoherent. It is eminently reasonable that a local government may: (1) control the time, place, and manner of temporary access to public roads during construction of equipment facilities; and (2) regulate other, longer term impacts that might incommode public road use under section 7901. Thus, we hold that section 7901.1 only applies to temporary access during construction and installation of telephone lines

and equipment.  Because the City treats all entities similarly in that regard, there is no section 7901.1 violation.

## III.  DISPOSITION

The judgment of the Court of Appeal is affirmed.

**CORRIGAN, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** T-Mobile West LLC v. City and County of San Francisco
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 3 Cal.App.5th 334
**Rehearing Granted**

_____

**Opinion No.** S238001
**Date Filed:** April 4, 2019
_____

**Court:** Superior
**County:** San Francisco
**Judge:** James J. McBride

_____

**Counsel:**

Wiley Rein, Joshua S. Turner, Matthew J. Gardner, Megan L. Brown, Meredith G. Singer; Davis Wright Tremaine, Martin L. Fineman, T. Scott Thompson and Daniel P. Reing for Plaintiffs and Appellants.

Janet Galeria; Jenner & Block, Scott B. Wilkens, Matthew S. Hellman, Adam G. Unikowsky, Erica L. Ross and Leonard R. Powell for the Chamber of Commerce of the United States of America, the California Chamber of Commerce, the San Francisco Chamber of Commerce, the Bay Area Council and the Silicon Valley Leadership Group as Amici Curiae on behalf of Plaintiffs and Appellants.

Mayer Brown, Hans J. Germann, Donald M. Falk and Samantha Booth for Pacific Bell Telephone Company and AT&T Mobility, LLC, as Amici Curiae on behalf of Plaintiffs and Appellants.

Crowell & Moring, Emily T. Kuwahara and Colin Proksel for American Consumer Institute Center for Citizen Research as Amicus Curiae on behalf of Plaintiffs and Appellants.

Wilkinson Barker Knauer, Christine M. Crowe and Craig E. Gilmore for CTIA-The Wireless Association and the Wireless Infrastructure Association as Amici Curiae on behalf of Plaintiffs and Appellants.

Dennis J. Herrera, City Attorney, Yvonne R. Meré, Chief of Complex and Affirmative Litigation, Christine Van Aken, Chief of Appellate Litigation, William K. Sanders, Erin B. Bernstein and Jeremy M. Goldman, Deputy City Attorneys, for Defendants and Respondents.

Rutan & Tucker, Jeffrey T. Melching and Ajit Singh Thind for League of California Cities, California State Association of Counties, International Municipal Lawyers Association and the States of California and Nevada Chapter of the National Association of Telecommunications Officers and Advisors as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Joshua S. Turner
Wiley Rein
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000

Jeremy M. Goldman
Deputy City Attorney
1 Dr. Carlton B. Goodlett Place, Room 234
San Francisco, CA  94102-4682
(415) 554-6762