Filed 3/18/24  P. v. Garcia CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JUAN MANUEL GARCIA,<br><br>　　Defendant and Appellant. | 2d Crim. No. B323974<br>(Super. Ct. No. TA155843)<br>(Los Angeles County) |

　　Juan Manuel Garcia appeals from judgment following a trial at which the jury found him guilty of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1) and possession of a firearm with a prior felony conviction (Pen. Code[1], § 29900, subd. (a)(1) (§ 29900(a)(1); count 2).  Appellant contends:  (1) this court must reverse his section 29900(a)(1) conviction because *New York State*

---

[1] All undesignated statutory references are to the Penal Code.

*Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*), renders that statute unconstitutional; (2) the trial court erred in failing to stay the punishment for the section 29900(a)(1) conviction under section 654; and (3) his case must be remanded to the trial court for a determination of whether, under section 1170, subdivision (b)(6)(A), his childhood trauma was a contributing factor in the commission of the offenses such that imposition of the low term is warranted.

We agree appellant's sentence violates section 654 and will stay execution of the eight-month consecutive sentence imposed on count 2. We will affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

Los Angeles County Deputy Sheriffs Tobin Hood and Jonathan Montes were on vehicle patrol when they saw a black Volkswagen Beetle blocking an alley. The deputies observed appellant, who was in the passenger seat, conversing with Waldo Gonzalez in the driver seat. After initially driving onward, within seconds the deputies returned and pulled up next to the vehicle. The vehicle's seats were reclined, and both appellant and Gonzalez appeared to be sleeping.

Deputy Hood approached appellant while Deputy Morales approached Gonzalez. Appellant awoke shortly after Deputy Hood knocked on the car window. Deputy Hood saw appellant using his feet to drag a plastic bag from the front of the foot compartment toward the area underneath the passenger seat. As appellant moved the bag, Deputy Hood saw a firearm, later identified as a loaded semiautomatic handgun. The firearm was between appellant's feet when Deputy Hood first saw it. The deputies handcuffed and searched appellant. Deputy Hood found a bindle with over ten grams of methamphetamine in appellant's

right front pant pocket.  Deputy Montes recovered a methamphetamine pipe from appellant's waistband.  The court accepted the parties' stipulation that appellant had been previously convicted of a felony.

The jury convicted appellant of possession of a controlled substance with a firearm (count 1) and possession of a firearm with a prior felony conviction (count 2).  At sentencing, appellant's trial counsel stated:  "[J]ust to get a little context, there's a grown man before us, a man in middle age now.  But he was also once an eight-year-old child who indicated to me today that he was molested by his uncle.  He never told anyone.  This is a common story.  It's very painful for people to talk about.  I can't corroborate that, and I'm no expert.  However, we do know my client has a criminal history.  Despite the mitigating factor, I think under the new Rules of Court and what has been happening with the change in the law, those type of early childhood traumas can lead to a recommendation of a low-term sentence."

The court sentenced appellant to a total term of four years, eight months:  the upper term of four years for count 1, plus a consecutive term of eight months (one-third the middle term) for count 2.  The court relied upon appellant's prior prison term as a circumstance in aggravation to impose the upper term on count 1.

DISCUSSION

*Section 29900(a)(1) Constitutionality*

Appellant contends *Bruen* requires reversing his conviction under section 29900(a)(1), which prohibits individuals previously

3

convicted of certain violent offenses from possessing or owning firearms.[2]  We disagree.

"A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  "The interpretation of a statute and the determination of its constitutionality are questions of law.  In such cases, appellate courts apply a de novo standard of review." (*People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 445.)  A facial constitutional challenge may be raised for the first time on appeal.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 887-889.)

"'To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute. . . .'" (*Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 267.)  Instead, a facial challenger must demonstrate the statute is constitutionally infirm in, at minimum, "'the *generality* or *great majority* of cases.'" (*People v. Buenrostro* (2018) 6 Cal.5th 367, 388.)  Other cases have adopted an even more stringent standard that requires showing the statute's ""'provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.'"" (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at

---

[2] Section 29900(a)(1) provides:  "Notwithstanding subdivision (a) of Section 29800, any person who has been previously convicted of any of the offenses listed in Section 29905 and who owns or has in possession or under custody or control any firearm is guilty of a felony."

p. 1084; see also *T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1117, fn. 6 [noting divergent formulations of standard].) Appellant's claim fails under either standard. Section 29900 does not violate the Second Amendment in the generality or great majority of cases, much less inevitably pose a present, total, and fatal conflict with that amendment.

Although appellant relies on *Bruen*, we begin with a brief review of U.S. Supreme Court precedent that informs *Bruen*. In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the Court struck down a District of Columbia law banning the possession of operable handguns in the home. (*Id.* at pp. 573-574, 635.) The Court held the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." (*Id.* at p. 592.) However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." (*Id.* at p. 626.) Accordingly, the Court added the following: "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." (*Id.* at p. 626.)

In *McDonald v. City of Chicago* (2010) 561 U.S. 742 (*McDonald*), the Court held the Second Amendment right recognized in *Heller* applies to the states through the Fourteenth Amendment. The *McDonald* plurality reiterated *Heller*'s assurance that this Second Amendment jurisprudence did not imperil longstanding regulatory measures like prohibitions on felons possessing firearms. (*Id.* at p. 786 (plur. opn. of Alito, J.).)

In *Bruen*, the Court invalidated New York's public-carry licensing regime, which required applicants to satisfy an

amorphous "proper cause" standard. (*Bruen, supra,* 597 U.S. at pp. 11-12.) It rejected the use of "means-end scrutiny" to evaluate Second Amendment claims. (*Id.* at pp. 19-20, 24.) The Court articulated the proper framework as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" (*Id.* at p. 24.)

While the *Bruen* majority did not directly address the question of felons possessing firearms, the majority consistently referenced the Second Amendment rights of "law-abiding" citizens. (*Id.* at pp. 9, 26, 29, 30, 31, 33, fn. 8, 38, fn. 9, 71.) Indeed, the *Bruen* Court expressed its core holding as follows: "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." (*Id.* at p. 71, italics added.) Moreover, the Court generally approved so-called "shall-issue" licensing schemes that issue gun permits more routinely but nevertheless subject individuals to background checks. (*Id.* at p. 38, fn. 9.)

Nothing in *Bruen* signals any departure from the continuing validity of laws prohibiting felons from possessing firearms, as originally expressed in *Heller* and reiterated by the *McDonald* plurality. Even assuming the endorsements of such laws in *Heller* and *McDonald* are dicta, "they are sensible and persuasive dicta." (*People v. Odell* (2023) 92 Cal.App.5th 307, 317 (*Odell*).) *Bruen* reinforces these endorsements. *Bruen*'s

6

consistent focus on the Second Amendment rights of law-abiding citizens impliedly negates those rights for citizens who do not abide by the law. Convicted felons, by definition, have failed to abide by the law. The *Bruen* majority's approval of background checks in licensing regimes further validates laws prohibiting felons from possessing firearms, given that one of the core purposes of a background check is to ascertain criminal history.

Section 29900(a)(1), the statute challenged here, is equivalent to prohibitions against felons possessing firearms as endorsed by the Court. Section 29900(a)(1) prohibits individuals convicted of specified violent offenses from possessing or owning firearms. (§§ 29900(a)(1), 29905.) A sizable majority of those violent offenses are felonies (e.g., murder, rape, carjacking). While in rarer circumstances the violent offense convictions could be misdemeanors, we conclude section 29900(a)(1) is precisely the type of longstanding firearm regulation the Court has approved.

The presumption framework articulated in *Bruen* does not alter this conclusion. If the presumption applies, the government "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." (*Bruen*, *supra*, 597 U.S. at p. 24.) As explained in *People v. Alexander* (2023) 91 Cal.App.5th 469, because the Second Amendment extends the right to bear arms only to law-abiding citizens, convicted felons "are not among 'the people' who have an individual right to possess firearms under the Second Amendment." (*Id.* at p. 479 [upholding sections 29800, subdivision (a)(1) and 30305 subdivision (a)(1), which bar felons and other prohibited persons from owning or possessing firearms and ammunition, respectively]; see also *People v. Ceja* (2023) 94 Cal.App.5th 1296, 1301 [upholding section 30305, subdivision

(a)(1)]; *Odell, supra*, 92 Cal.App.5th at p. 317 [upholding section 29800, subdivision (a)(1)].)  The same is true for individuals convicted of section 29900(a)(1) violent offenses.  Thus, appellant cannot demonstrate that the Second Amendment covers the conduct section 29900(a)(1) prohibits, and no presumption of unconstitutionality applies.  Accordingly, under the *Bruen* test, we need not consider whether the People offered a sufficient historical justification for section 29900(a)(1).

*Multiple Punishments Under Section 654*

Appellant asserts the trial court violated section 654 by not staying the punishment imposed for count 2.  The People appear to agree but stop short of conceding the issue.  We likewise agree.

Section 654, subdivision (a), provides:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  In conducting a section 654 analysis, the court begins by asking "if the different crimes were completed by a 'single physical act.'" (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  "Whether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses." (*Id.* at p. 313.)  If only a single act exists, then the defendant may not be punished more than once for that act.  (*Id.* at p. 311; see also *People v. Jones* (2012) 54 Cal.4th 350, 358 (*Jones*).)  The court examines the facts of each case to determine whether the different convictions are rooted in a single physical act. (*Corpening*, at p. 312.)  When those facts are undisputed, the

application of section 654 raises questions of law we review de novo.  (*Ibid*.)

In *Jones*, *supra*, 54 Cal.4th at p. 357, our Supreme Court held "that a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." The trial court had sentenced the defendant on three underlying offenses, all stemming from a single incident in which the defendant, a convicted felon, was found with a loaded, unregistered firearm.  (*Ibid*.)  *Jones* held that section 654 prohibited punishment for more than one of those crimes because the defendant had committed a single act.  (*Ibid*.; see also *People v. Washington* (2021) 61 Cal.App.5th 776 [section 654 barred multiple punishments for possessing a controlled substance while armed (Health & Saf. Code, § 11307.1, subd. (a)) and possessing a firearm as a felon (§ 29800(a)(1), subd. (a)(1)) based on a single act of firearm possession].)

Appellant's punishment under both section 29900(a)(1) and Health and Safety Code section 11370.1, subdivision (a)(1) violates section 654 because the same physical act completed both offenses.  Like the *Jones* defendant, appellant possessed the firearm on a single occasion while seated in the car.  The trial court erred in punishing appellant more than once for this single act of firearm possession.

Appellant requests remand so the trial court can consider whether to impose punishment on count 1 or count 2.  However, such remand is unnecessary.  The trial court designated the four-year (upper) term in count 1 as principal and the eight-month (one-third the middle) term in count 2 as subordinate.  This choice precludes a reasonable belief the trial court would, upon remand, impose punishment only on count 2, which carries a

9

maximum sentence of three years.  The trial court already declined that option in sentencing appellant to the four-year upper term for count 1.  We are, therefore, persuaded beyond a reasonable doubt that appellant would not receive a more favorable sentence upon remand.  (*Cf. People v. Berdoll* (2022) 85 Cal.App.5th 159, 165.)  Pursuant to section 654, we will stay execution of the eight-month consecutive sentence imposed on count 2.  (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.)

*Section 1170, Subdivision (b)(6)(A) Childhood Trauma*

Appellant contends the trial court lacked discretion to impose the upper term on count 1 without finding appellant's childhood trauma was not a contributing factor under section 1170, subdivision (b)(6)(A) (section 1170(b)(6)(A)).  Appellant asserts the trial court should have inquired further into his childhood trauma and taken this experience into account during sentencing.  We conclude no error occurred.

Section 1170, subdivision (b)(1) vests the choice of a triad term in the trial court's "sound discretion," subject to certain limitations.  (§ 1170, subd. (b)(1).)  Subdivision (b)(6) limits this discretion.  It states:  "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:  [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."  (§ 1170, subd. (b)(6).)

10

"'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.) "To meet this burden, the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.'" (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.) "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) However, "'[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

We reject the People's initial argument that appellant has forfeited his claim under section 1170(b)(6)(A). While defense counsel did not specifically invoke the statute, counsel communicated the claim of childhood trauma and indicated such trauma "can lead to a recommendation of a low-term sentence." This reference suffices to avert forfeiture. We decline to elevate form over function.

Nevertheless, appellant has not established sentencing error. Section 1170(b)(6)(A) does not impose a general duty of inquiry on the trial court. It establishes a low-term presumption

11

*if* childhood trauma was a contributing factor in the commission of the offense.  (§ 1170(b)(6)(A).)  Defense counsel did not assert, let alone establish, any causal connection between the childhood trauma and the offenses.  Nor does the record contain any other evidence of childhood trauma that would trigger the presumption.  Given that dearth of evidence, section 1170(b)(6)(A)'s presumption did not operate, and the trial court did not err by failing to inquire into the childhood trauma.  (*See People v. Fredrickson* (2023) 90 Cal.App.5th 984, 992 [holding that, in order to trigger the low-term presumption under section 1170, subdivision (b)(6), "there must be some initial showing" of a statutory contributing factor, "and only then must the record affirmatively show compliance with the statute"].)

Nor has appellant shown the trial court erred in failing either to address childhood trauma in imposing the sentence or to expressly eliminate that trauma as a contributing factor.  Section 1170, subdivision (b)(5) simply requires:  "The court shall set forth on the record the facts and reasons for choosing the sentence imposed."  The trial court satisfied this requirement when it cited appellant's prior prison term as an aggravating circumstance.  Section 1170 does not task the trial court with making explicit findings or statements regarding a purported, but unsubstantiated, section 1170(b)(6)(A) contributing factor.

## DISPOSITION

The judgment is modified to stay execution of the eight-month consecutive sentence imposed on count 2.  (§ 1260.)  The trial court is directed to prepare an amended abstract reflecting the modification ordered by this court and to forward a certified copy of the abstract to the California Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED.



                                    CODY, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

Hector E. Gutierrez, Judge
Superior Court County of Los Angeles

_____

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Bryne, Supervising Deputy Attorney General, Stephanie A. Miyoshi and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.