Filed 11/22/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LET THEM CHOOSE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>        Defendant and Appellant. | D079906<br><br><br>(Super. Ct. No.<br>37-2021-00043172-CU-WM-CTL) |
| S.V. et al.,<br><br>        Plaintiffs and Respondents,<br><br>        v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>        Defendant and Appellant. | (Super. Ct. No.<br>37-2021-00049949-CU-WM-CTL) |

        APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Judgment affirmed; requests for judicial notice granted in part and denied in part.

Atkinson, Andelson, Loya, Ruud & Romo, Mark Robert Bresee, Amy W. Estrada, Alyssa Ruiz de Esparza for Defendant and Appellant.

Aannestad Andelin & Corn, Lee Michael Andelin and Arie L. Spangler for Plaintiff and Respondent Let Them Choose, etc.

Siri & Glimstad, Aaron Siri and Caroline Tucker for Plaintiffs and Respondents.

A century ago during a smallpox epidemic, the California Supreme Court held that the Legislature may require school children to be vaccinated against that disease. (*Abeel v. Clark* (1890) 84 Cal. 226, 230.) Since then, the Legislature has required students to be vaccinated for 10 diseases—but COVID-19 is not yet among them. The issue here is whether a *school district* may require students to be vaccinated for COVID-19 as a condition for both (1) attending in-person class, and (2) participating in extracurricular activities. The superior court determined there was a "statewide standard for school vaccination," leaving "no room for each of the over 1,000 individual school districts to impose a patchwork of additional vaccine mandates." On independent review, we reach the same conclusion and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The operative facts are few and undisputed. In September 2021, the San Diego Unified School District (District) adopted a "Vaccination Roadmap" (Roadmap) requiring students ages 16 or older to be vaccinated for COVID-19 in order to attend in-person classes and participate in sports and other

extracurricular activities.[1]  Unvaccinated students in this group were involuntarily placed on independent study.  The Roadmap recognizes an exemption for medical reasons, but not for religious or personal beliefs.[2]

<hr />

[1]    In June 2022, the District  informed us that it has delayed implementing the vaccine mandate to no earlier than July 2023.  For the first time at oral argument in November 2022, its attorney asserted this delay rendered the consolidated appeals moot.  Alternatively, counsel maintained that at a minimum, S.V.'s case was moot because in July 2023 he will be completing his senior year of high school.

For obvious considerations of fairness, we ordinarily do not consider points made for the first time at oral argument (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9), and we decline to do so here.  The District could have raised this issue at least five months ago, either by motion or in its reply brief in response to an argument by Let Them Choose that the postponement did *not* make the case moot.  It did neither.

Even putting aside forfeiture, the cases are not moot because merely postponing (as distinguished from cancelling) the vaccination mandate does not impact this court's ability to render effective relief.  In any event, we would exercise our discretion to decide the consolidated appeals because they present issues of broad public interest that are likely to recur.  (See *Berroteran II v. Superior* Court (2022) 12 Cal. 5th 867, 877.)

[2]    We deny the District's April 2022 request for judicial notice of a press release (exh. A) entitled "California Becomes First State in Nation to Announce COVID-19 Vaccine Requirements for Schools."  The District concedes that the document was not presented to the trial court.  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  At most, we could take judicial notice of the existence of the press release, but not the truth of its contents.  (See *Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 826–827.)  On the same grounds, the request for judicial notice of a different press release by Let Them Choose is also denied.

In October 2021, Let Them Choose filed a complaint and petition for a writ of mandate challenging the Roadmap.[3]  About six weeks later, a similar complaint was filed by S.V., the parent of a 16-year-old student.  The cases were consolidated for trial.[4]

After conducting a hearing on motions for judgment, the court ruled that the District's COVID-19 immunization requirement is preempted by state law.  It reasoned:

> "I think that the state . . . has fully occupied this field, there's a statewide standard, and a local school district simply doesn't have the authority to do something inconsistent with the statewide standard."

## DISCUSSION

A.    *The Statutory and Regulatory Framework for School Vaccination*

Health and Safety Code[5] section 120335 provides that a school "shall not unconditionally admit" a pupil who has not been vaccinated for:  polio, diphtheria, tetanus, pertussis, hepatitis B, haemophilus influenzae type B (HIB), measles, mumps, rubella, and chicken pox.  (§§ 120370, subd. (a)(3), 120335, subd. (b)(1)–(10).)  "Each of the 10 diseases was added . . . through legislative action, after careful consideration of the public health risks of these diseases, cost to the state and health system, communicability, and rates of transmission." (*Love v. State Dept. of Education* (2018) 29

---

[3]    The complaint alleges that Let Them Choose is "an initiative of Let Them Breathe, California nonprofit public benefit corporation that represents a community of more than 20,000 parents."

[4]    On appeal, Let Them Choose and S.V. have filed separate briefs, but have also joined in each other's arguments.

[5]    Undesignated statutory references are to the Health and Safety Code.

Cal.App.4th 980, 993 (*Love*).)  The California Department of Public Health (DPH) has adopted detailed regulations to effectuate this law.  (§§ 20, 120390; Cal. Code Regs., tit. 17, § 6000 et seq.)[6]

As enacted in 1995, former sections 120365 and 120370 provided exemptions from the vaccination requirements based on personal beliefs or medical reasons.  (Stats. 1995, ch. 415, p. 3003.)  But in 2015, the Legislature eliminated the personal beliefs exemption for the existing 10 specified vaccinations.[7]  (*Love, supra*, 29 Cal.App.5th at p. 986.)  At the same time, it also considered whether vaccination should be mandated on a *school district by school district basis*, or instead statewide.  A bill analysis explained that a statewide standard was preferred:

> "To provide a statewide standard[ ] allows for a consistent policy that can be publicized in a uniform manner, so districts and educational efforts may be enacted with best practices for each district. . . .  Further in consultation with various health officers, they believe a statewide policy provides them the tools to protect all children equally from an outbreak."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 277 (2015–2016) as amended Apr. 22, 2015, p. 18.)[8]

Section 120335 does not specify when a student must be immunized.  Regulation 6025 fills that gap.  It provides that a school "shall

---

[6]    Citations to regulations are to title 17 of the Code of Regulations.

[7]    As we later explain, a personal beliefs exemption is still required if the DPH exercises its statutory authority to add required immunizations beyond the 10 specified in section 120335, subdivision (b).  (Stats. 2015, ch. 35, § 3.)

[8]    The court grants the District's unopposed request for judicial notice of the Senate Judiciary Committee analysis cited in the text above (exh. C), as well the Assembly Committee on Health analysis of Senate Bill No. 277 (exh. B).

unconditionally admit or allow continued attendance" to any pupil who has provided documentation for each immunization as set forth in one of two tables. (*Id.,* subd. (a).) Table A applies to students ages two months to five years old. Table B, applicable to grades Kindergarten through 12, sets forth required immunizations for school admissions:

**TABLE B: CALIFORNIA IMMUNIZATION REQUIREMENTS FOR GRADES K-12**

| GRADE | NUMBER OF DOSES REQUIRED OF EACH IMMUNIZATION[1,2,3] | | | | |
|---|---|---|---|---|---|
| K-12 Admission | 4 Polio[4] | 5 DTaP[5] | 3 Hep B[6] | 2 MMR[7] | 2 Varicella |
| (7th-12th)[8] | 1 Tdap | | | | |
| 7th Grade Advancement[9,10] | 2 Varicella[10] | 1 Tdap[8] | | | |

B.   *The District's COVID-19 Vaccination Mandate is Preempted by State Law*

Intrastate preemption occurs when local law " ' " ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " ' " (*T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1116 (*T-Mobile West LLC*).) Local law "contradicts" state law (conflict preemption) when it " 'directly requires what the state statute forbids or prohibits what the state enactment demands.' " (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743 (*City of Riverside*).) It enters a field already occupied by state law (field preemption) "when the Legislature 'expressly manifest[s]' its intent to occupy the legal area or when the Legislature 'impliedly' occupies the field." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th

_____

9    DTaP = diphtheria toxoid, tetanus toxoid, and acellular pertussis; MMR = measles, mumps, and rubella (Reg., § 6000(c)(9)); Tdap = tetanus toxoid, reduced diphtheria toxoid, and acellular pertussis (*id.*, subd. (c)(1), (c)(3) & (c)(9).) Superscript numbers (e.g., Polio[4]) correspond to footnotes in the regulation containing additional details.

6

1061, 1068.)  Although either would suffice, here the Roadmap is preempted on both grounds.[10]

1. *The Roadmap Conflicts with Health and Safety Code Section 120335 and Regulation 6025 by Adding Requirements in a Manner Inconsistent with a Comprehensive Statewide Scheme*

Section 120335 is phrased somewhat awkwardly in the negative—it tells a local school district what it cannot do:

> "The governing authority *shall not unconditionally admit* any person as pupil *unless*, prior to his or her first admission to that institution, he or she has been fully immunized."  (§ 120335, subd. (b), italics added.)

"[F]ully immunized" is defined in subdivision (b)(1) through (11) of the same statute, which identifies 10 "diseases for which immunizations shall be documented," plus "any other disease deemed appropriate by the department"[11] after "taking into consideration the recommendations" of several medical groups, including the Advisory Committee on Immunization Practices of the United States Department of Health and Human Services (Advisory Committee).  (§ 120335, subd. (b)(11).)

On its face, section 120335 provides that a student who is not "fully immunized" within the meaning of the statute cannot be unconditionally admitted to school.  No one disputes that.  But what about a pupil who *is* fully immunized within the meaning of section 120335, but is not vaccinated for COVID-19?  Reasonably construed, section 120335 speaks to that too.  By creating a comprehensive state procedure to determine the compulsory

_____

10    Preemption is a question of law reviewed independently on appeal. (*Chevron U.S.A., Inc. v. County of Monterey* (2021) 70 Cal.App.5th 153, 174.)

11    The "department" is DPH, formerly known as the State Department of Health Services.  (§ 131051, subd. (a)(3)(J).)

vaccinations for school attendance, the statute by negative-but-necessary implication provides that students who comply with state immunization requirements (and any other eligibility rules, e.g., residency, age) are entitled to attend California schools, and the "governing authority" is not permitted to add its own vaccination mandates.[12] (*Spicer v. City of Camarillo* (2011) 195 Cal.App.4th 1423, 1427 ["[A] statute may express the law by 'negative implication' "].)

This conclusion follows from both the language and structure of section 120335, as well as the State Department of Public Health regulation that interprets it. It might be a different matter if the statute merely established a set of minimum vaccination requirements, leaving it to local school districts to supplement with additional immunizations they believed necessary to protect the health of the students. But section 120335 does much more than set statewide minimums. By creating a process by which new immunizations can be added to the statutory list without further legislative action, it expresses a directive that the vaccinations required for school attendance present a statewide issue subject to statewide criteria. In a nutshell, local variations must give way to a uniform state standard.

Significantly, DPH interprets the statute the same way. Citing section 120335 as its authority, regulation 6025 provides:

> "A school . . . facility *shall unconditionally admit or allow continued attendance* to any pupil . . . whose parent or guardian has provided documentation . . . for each immunization required for the pupil's age or grade, as defined in Table A or B of this section." (Reg., § 6025, italics added.)

---

[12] Under section 120335, the " 'governing authority' means the governing board of each school district or the authority of each other private or public institution responsible for the operation and control of the institution or the principal or administrator of each school or institution."

8

Of course, the ultimate responsibility for interpreting a statute rests with courts. Nevertheless, we ordinarily defer to an agency's interpretation where it has "consistently maintained the interpretation in question, especially if it is long standing" and contemporaneous with the Legislature's enactment of the relevant statute. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13.)

Both of these factors exist here. In 1979, the Legislature amended former section 3381 to add the key language that is now in section 120335. The 1979 version provided:

> "The governing authority shall not unconditionally admit any person as a pupil . . . unless prior to his or her first admission to that institution he or she has been fully immunized against . . . [enumerated diseases]." (Stats. 1979., ch. 435, § 2, p. 1560.)

The corresponding language in regulation 6025 was adopted contemporaneously, stating:

> "Any pupil who has received the required immunizations against poliomyelitis, diphtheria, tetanus, pertussis and measles (rubeola) *shall be admitted without condition* as a pupil to a given public or private elementary or secondary school." (Reg., § 6025, Register 79, No. 35 (Sept. 1979) p. 144.1, italics added.)

The plain language in regulation 6025 undermines the District's claim that it can exclude a student who has received all the statutorily required immunizations. Its only response is that the regulation itself is void because it "contradicts the plain language" of Health and Safety Code section 120335, subdivision (a). But there is no contradiction. The regulation merely states in express language what the statute necessarily implies.

In a related argument, the District maintains that interpreting regulation 6025 in this manner leads to "illogical results." It posits a

9

hypothetical where fully vaccinated students are nevertheless statutorily ineligible to attend school because they are underage or a nonresident. The District maintains that in such a case, regulation 6025 would seemingly require that such student be "unconditionally admitted"—an absurd result.

This argument fails because "unconditionally admitted" as used in regulation 6025 is a specifically defined term of art. It means "admission based upon documented receipt of all required immunizations for the pupil's age or grade, in accordance with section 6025" except for immunizations "permanently exempted for medical reasons" or for "personal beliefs in accordance with Health and Safe code section 120335." (Reg., § 6000, subd. (a)(1)(A)–(B).) Thus, Regulation 6025 does not require a fully vaccinated but underage or nonresident student to be admitted. But it does require admission of a student *otherwise eligible to be admitted* if that student is fully immunized.[13]

Even if the Roadmap did not contradict the applicable state statutes and regulations, it would be preempted because it purports to regulate an area of law that the Legislature has " 'fully occupied.' " (*City of Riverside*, *supra*, 56 Cal.4th at p. 743.) In making this determination, relevant factors include whether:

> "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; or

---

[13]    There is another conflict as well. If the DPH were to add COVID-19 under section 120335, subdivision (b), a student would be entitled to seek an exemption based on "medical reasons and *personal beliefs*." (§ 120338, italics added.) But the Roadmap lacks any personal belief exemption. Accordingly, it is even more restrictive than what the DPH itself could lawfully impose.

"(2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action . . . ." (*Id.* at p. 743.)

Both factors are present in this case. The Legislature has covered the matter fully and completely, defining the who, what, when, and where of compulsory student vaccination:

1.  Who shall receive vaccines. (§ 120335, subd. (b).)

2.  Who may administer vaccines. (§§ 120375, subd. (d), 120380.)

3.  Sources for obtaining immunization. (§ 120345.)

4.  Proper documentation of vaccination. (§ 120355.)

5.  Exemption for community college students. (§ 120360.)

6.  The diseases for which immunization shall be documented. (§ 120335, subd. (b)(1)–(11).)

7.  The role of county health officers in organizing and maintaining a program to make immunizations available. (§ 120350.)

8.  Who can add diseases to the list of required immunization. (§ 120335, subd. (b)(11).)

9.  Medical exemptions and appeal of revoked medical exemptions. (§§ 120370, 120372.05.)

10. Conditional admission of students not fully vaccinated. (§ 120340.)

11. Excluding unvaccinated students who are exposed to specific diseases. (§ 120370, subd. (b).)

Given the scope of the state statutes, school districts have no remaining discretion in these matters. Regulation 6025, for example, provides that a school "*shall* unconditionally admit or allow continued attendance to any pupil" who provides documentation of each immunization required for their age or grade. (*Id.,* subd. (a), italics added; Health and Safety Code, § 16 [" '[s]hall is mandatory' "].) Similarly, local authorities have no decision-

11

making authority regarding who can administer vaccines. (Ed. Code, § 49403, subds. (a) & (b).) The student vaccination statutes " 'are so extensive in their scope that they clearly show an intention by the Legislature to adopt a general scheme for the regulation of' " mandatory vaccinations for school students to attend in person class and participate in extracurricular activities. (See *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1254–1255.) The extensive statutory scheme demonstrates that "[t]he Legislature has recognized that matters of health and medicine . . . are of statewide concern" in which "the Legislature has paramount authority." (*Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 107, 108.)

Most compelling, as we have already noted, the Legislature has fully addressed the process of adding diseases to the 10 enumerated ones in section 120335. In subdivision (b)(11) of that statute, the Legislature contemplated new vaccine mandates in the future without further legislative action—but assigned that responsibility *not to school authorities*, but rather to the DPH. Even then, it required DPH to consider recommendations from two national physician organizations, one specializing in family medicine and the other in pediatrics—plus the Advisory Committee, which is "the key decision-making body within the federal government on childhood immunization policy."[14] The Roadmap's COVID-19 mandate unlawfully seeks to usurp that authority. If the District desired to condition school attendance on a vaccination for COVID-19, it should have urged DPH to

---

[14] See Holland, *Compulsory Vaccination, the Constitution, and the Hepatitis B Mandate for Infants and Young Children* (2012) 12 Yale J. Health Pol'y, L. & Ethics 39, 54.

follow the existing statutory procedure under section 120335, subdivision (b)(11) for adding new immunizations.[15]

### 2. *The District's Contrary Arguments Are Unavailing*

In sum then, we reject the District's primary contention that the Legislature left the door open for local school districts to require student vaccination for COVID-19 as a condition to attending in-person class. In urging otherwise, the District first maintains "there is a presumption against preemption" that imposes "a high" bar. Actually, however, the "presumption against preemption" is more nuanced. It applies only when a regulation is in an area over which local government traditionally has exercised control, such as land use. (*People v. Nguyen* (2014) 222 Cal.App.4th 1168, 1186.) No presumption arises where, as here, a local mandate intrudes into an area historically subject to state regulation. (*Id.* at p. 1187.)

Since 1911, the Legislature has regulated student vaccination. (See Stats. 1911, ch. 134 [smallpox vaccine].) Because this is an area of law over which the Legislature has generally exercised control, no presumption against preemption exists. In any event, even if the presumption operated, it is merely a starting point. It can be—and here has been—rebutted by the statutory analysis we have already undertaken.

Apart from any presumption, the District contends that school districts have "significant authority and responsibility over student health and safety measures." It invokes authority to require COVID-19 vaccination based on the Crime Victim's Bill of Rights Act of 2008: Marsy's Law (Cal. Const., art.

---

[15] Because of this disposition, it is unnecessary to address plaintiffs' claims that (1) the judgment should be affirmed on procedural grounds involving alleged defects in the appellant's appendix; and (2) Education Code section 49405 expressly preempts local regulation of student vaccinations.

I, § 28), under which students have an "inalienable right to attend campuses which are safe, secure and peaceful." (*Id.,* at § 28(f)(1).) But context is crucial here. The right to school safety encompassed within the Victim's Bill of Rights "was intended to be, is aimed at, and is limited to, the single subject of safety from criminal behavior." (*Brosnahan v. Brown* (1982) 32 Cal.3d 236, 248.)

The District also relies on cases recognizing a "special relationship" between a school district and its students. According to the District, this relationship requires schools to use reasonable measures to protect students from foreseeable injury at the hands of third parties. (See *Achay v. Huntington Beach Union High School Dist.* (2022) 80 Cal.App.5th 528, 536; *Ratcliff v. The Roman Catholic Archbishop of Los Angeles* (2022) 79 Cal.App.5th 982, 1007.) Somewhat ironically given the context of this case, this special relationship is usually invoked by parties seeking to impose tort liability on a school district for personal injury. That was the situation in two of the cases the District cites, *Rodriguez v. Inglewood Unified School District* (1986) 186 Cal.App.3d 707, 711 (student stabbed by a nonstudent) and *Walsh v. Tehachapi Unified School District* (2014) 997 F. Supp.2d 1071, 1086 (death by suicide after bullying). We are not persuaded that the policies that have led to recognizing a tort duty to prevent personal injury extend to compelled vaccination, which is essentially a medical decision.

Searching elsewhere for authority, the District points to Education Code section 49400, which provides that a school district "shall give diligent care to the health and physical development of pupils, and may employ properly certified persons for the work." But this statute does not mention vaccination. The more natural reading, consistent with other provisions in the Education Code, is that it authorizes school districts to employ persons to

14

(1) conduct sight and hearing tests (Ed. Code, § 49452); (2) screen for scoliosis (*id.*, § 49452.5); (3) develop informational materials for type 1 and type 2 diabetes (*id.*, §§ 49452.6, 49452.7); (4) document that the child has received a dental assessment (*id.*, § 49452.8); and (5) appraise the student's vision "[d]uring the kindergarten year or upon first enrollment, and in grades 2, 5, and 8" (*id.*, § 49455).

The District also invokes Education Code section 49403, subdivision (a), which states that notwithstanding any other law, a school district "shall cooperate with local health officers" in preventing communicable diseases and for that purpose may use its funds and personnel "to administer an immunizing agent to a pupil" whose parent has consented. These immunization programs include seasonal influenza and "diseases that represent a current or potential outbreak as declared by a federal, state, or local public health officer." (Ed. Code, § 49403, subds. (b)(2)(C)(i)–(iii) & (e)). Again, however, we believe the reasonable interpretation of the statute is more narrow. Education Code section 49403 does not allow a local school district to mandate new vaccinations; it merely permits the district to *administer* vaccinations—that is, to give injections—and only if the parent of the student agrees. Subdivision (a) provides that a school board may use its money and personnel to "administer" vaccine. Subdivision (b) identifies the "health care practitioners" who, "acting under the direction of a supervising physician and surgeon" are authorized to administer a vaccine "within the course of a school immunization program." This includes, for example, a nurse practitioner and licensed vocational nurse. (*Id.*, § 49403, subd. (b)(1)(B) & (b)(1)(D).) The statute also limits the authority of the person administering the vaccine. "The administration of an immunizing agent" must be "upon the standing orders of a supervising physician" and "in

15

accordance with any written regulations that the State Department of Public Health may adopt." (*Id.*, § 49403, subd. (b)(2)(A).) And the person administering immunizations may only do so for the control of influenzas and "[o]ther diseases that represent a current or potential outbreak *as declared by a federal, state, or local public health officer.*" (*Id.*, § 49403, subd. (b)(2)(C)(iii), italics added.) Thus, consistent with Health and Safety Code section 120335, subdivision (b)(11), here too the Legislature has mandated that public *health* officials—not school authorities—determine the disease(s) for which vaccinations are required.

The District's reliance on Education Code section 49403 also proves too much. Subdivision (a) of that statute authorizes use of school district funds to vaccinate a pupil "*whose parent or guardian has consented in writing to the administration of the immunizing agent.*" (*Id.*, § 49403, subd. (a), italics added.) Here, S.V. specifically alleges that he does not consent. Thus, even if interpreted as the District claims it should be, it would not authorize *involuntary* COVID-19 vaccination involved in this case.

The District also cites Education Code sections 35160, 35160.1, and article IX, section 14 of the state Constitution—all of which grant a school district broad authority to initiate programs designed to meet local needs.[16] No one denies such authority. The problem for the District's position is that local programs cannot "conflict with or [be] inconsistent with, *or preempted by*, any law . . . ." (Ed. Code, § 35160, italics added.) Even the broadest scope of local authority ends where it interferes with state law.

---

16    "The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established." (Cal. Const., art. IX, § 14.)

16

Apart from these statutes, the District also relies on a 64-year-old opinion from the California Attorney General, which it claims "reinforc[es] the conclusion that student vaccination programs are not the exclusive province of the Legislature." The question presented in the 1958 opinion was whether a school district can use its funds to pay for flu shots for staff and students. The Attorney General concluded it could. (31 Ops.Cal.Atty.Gen. 27, 28 (1958).) We have no reason to disagree, but that opinion goes only so far. There is a huge difference between having authority to pay for a flu shot and the power to require a student to get one as a condition of attending class.

The Attorney General's opinion is consistent with Education Code section 49403, which provides that a school board may use its money and personnel to administer a vaccine. But as already explained, that is not a grant of legislative power to declare what disease(s) a student must be vaccinated for as a condition of attending class. Health and Safety Code section 120335, subdivision (b)(11) vests such power in the DPH alone, and even then, only upon consultation with medical experts.

Finally, the District makes the strained argument that the Roadmap does not actually mandate students be vaccinated for COVID-19. Rather, it gives them the choice to either do so or be enrolled in independent study. Reminiscent of the school cafeteria offering a choice between Brussels sprouts or broccoli, the District asserts, "A choice between two options, even if both are not preferred, is still a choice, and the same choice cannot be called coerced in one instance and voluntary in the other instance."

We doubt that students and their parents perceive a real choice. For some, independent study would likely be a step backwards. According to the State Department of Education, independent study "may not be the right

17

option for every pupil who is not thriving in a regular classroom setting. Some pupils might be better served in an educational option that is classroom-based and offers a smaller learning environment and more individualization."[17]  "Generally, success in independent study requires motivation and a strong commitment on the part of the pupil and, for some pupils, requires the support of parents/guardians/caregivers.  It also requires sufficient academic preparation to enable the pupil to work independently."[18]

In any event, the District's free choice argument is belied by Regulation 6025.  It gives the school no choice but to "admit or allow *continued attendance*" to any pupil whose parent or guardian has provided documentation of the 10 required immunizations and/or medical or applicable personal belief exemptions.  (Reg., § 6025, subd. (a), italics added.)  The plain meaning of "attendance" in this context is in-classroom learning.  To the extent the Roadmap requires a student who is fully vaccinated within the meaning of Regulation 6025 to choose between a mandated COVID-19 vaccination and involuntary independent study, it is a choice the Legislature does not permit the District to compel.[19]

---

[17]  California Department of Education, Is Independent Study Right for My Pupil?  <https://www.cde.ca.gov/sp/eo/is/rightforstudent.asp> archived [as of Nov. 22, 2022] at <https://perma.cc/DET4-2GQ7>.

[18]  See footnote 16, *ante*.

[19]  The court generally denies the request for judicial notice filed by Let Them Choose on May 25, 2022.  The request does not indicate, as required by California Rules of Court, rule 8.252(a)(2)(B), whether the trial court was requested to take judicial notice of the matters.  In any event, statistical information regarding COVID-19 (exhs. A and B), various items of legislative history (exhs. D, E, and F), and Los Angeles Board of Education meeting minutes (exh. I) are not relevant to the disposition of the issues on appeal and judicial notice of these exhibits is denied on that basis.  The court takes

DISPOSITION

The judgment is affirmed. The stay issued February 1, 2022 is vacated on the date this opinion becomes final as to this court. (See Cal. Rules of Court, rule 8.264(b).) Respondent is entitled to recover costs on appeal.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

judicial notice of exhibit K, which is not opposed, but only to the extent it indicates the proposed vaccination mandate is deferred to no earlier than July 2023. Exhibits G, H, J, and L (news articles) are not properly subject to judicial notice.

The court grants the unopposed request for judicial notice filed by S.V. on May 25, 2022. The request consists entirely of California statutes, which are subject to mandatory judicial notice. (Evid. Code, § 451, subd. (a).)